Arlene L. DOLCY

v.

RHODE ISLAND JOINT REINSUR-
ANCE ASSOCIATION.

No. 89–548–Appeal.

Supreme Court of Rhode Island.

April 9, 1991.

Stephen A. Gordon, Gordon, Harris & O'Brien, Providence, for plaintiff.

Richard L. Patz, Hines, Patz & Wolpert, Inc., Providence, for defendant.

## OPINION

MURRAY, Justice.

The plaintiff, Arlene L. Dolcy (Arlene or plaintiff), is appealing the grant of summary judgment for the defendant, Rhode Island Joint Reinsurance Association (Association). Simply stated, the issue in this case is whether an innocent, noncollusive spouse may recover under a fire insurance policy issued to a husband and wife, on property held as tenants by the entirety, when the other spouse intentionally sets fire to the property. For the reasoning that follows, we affirm the Superior Court's judgment denying this particular plaintiff recovery.

The policy involved in this case is a standard homeowner's policy. The policy lists the "insured's name" as Malcolm A. Dolcy (Malcolm) and Arlene L. Dolcy. At the time of the fire, Arlene had filed a complaint for divorce against Malcolm and had obtained a court order enjoining Malcolm from gaining access to the property. Malcolm was further enjoined and restrained from assaulting, molesting, or otherwise interfering with Arlene at home, on the street, or elsewhere. On March 16, 1986, Malcolm entered the premises without consent and in violation of the court order, assaulted plaintiff, and set fire to the premises. The plaintiff had no control over Malcolm's conduct, had no knowledge of

his actions in setting the fire, and did not misrepresent any facts or engage in any fraud in causing or contributing to the subject fire loss.

The issue posed by this case is one of first impression for this court but has been confronted by many other jurisdictions. *See generally* Annot. *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured,* 11 A.L.R.4th 1228 (1982 and 1990 Supp.).

■ At one time this court would have analyzed this case under common-law-property principles. Under this older line of reasoning, an innocent coinsured spouse is denied recovery "on the theory that spouses who hold joint interests in insured property have a joint obligation to refrain from defrauding the insurance company so that the fraud of one spouse necessarily becomes the fraud of the other." *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 614, 299 S.E.2d 561, 563 (1983) (recounting past reasoning of this issue and citing *Kosior v.*

*Continental Ins. Co.,* 299 Mass. 601, 13 N.E.2d 423 (1938)). Thus under this view, the question of whether an insured is covered despite the fraud of another coinsured depends on the "underlying property interest, i.e., tenancy by the entirety, joint tenancy, etc." *McCauley Enterprises, Inc. v. New Hampshire Insurance Co.,* 716 F.Supp. 718, 720 (D.Conn.1989).

However, in recent years nearly all jurisdictions have been taking a more enlightened view of this problem. *Id.* One line of cases views this problem as one of insurance-contract interpretation. Under this reasoning, the courts "focus upon the insured's obligations under the insurance policy." *Error v. Western Home Ins. Co.,* 762 P.2d 1077, 1080 (Utah 1988). Thus, whether an innocent coinsured may recover depends upon whether the coinsureds' obligation to refrain from fraud and arson is considered to be joint rather than separate. *McCauley,* 716 F.Supp. at 720. If the obligation not to commit fraud and arson is deemed to be joint, then neither insured can recover.[1] If the obligations are

---

1. We note in passing a developing train of thought indicating that even if obligations under the insurance contract are deemed to be joint, courts may sometimes reform the insurance contract to make the obligations separate. *See Ponder v. Allstate Ins. Co.,* 729 F.Supp. 60 (E.D. Mich.1990). In *Ponder,* the insurance policy in question did not conform to the statutory standard fire insurance policy. Michigan's statutory policy had been interpreted by the Michigan courts to mean that wrongdoing voids a policy only as to individual wrongful insureds and that innocent insureds may still recover. *Id.* at 61. *See also Morgan v. Cincinnati Ins. Co.,* 411 Mich. 267, 276–77, 307 N.W.2d 53, 54–55 (1981) (court interprets statutory standard "concealment/fraud" clause as creating separate obligations).

Rhode Island also has a statutory standard fire insurance policy. *See* G.L.1956 (1989 Reenactment) § 27–5–3. Like Michigan's standard policy, our standard policy has a "Concealment, Fraud" clause, both of which read, "This entire policy shall be void if, whether before or after a loss, *the* insured willfully concealed or misrepresented any material fact or circumstance * * * [and the policy shall be void if there is] any fraud or false swearing by the insured." (Emphasis added.) In *Ponder,* the insurer substituted the word "any" for the word "the" in an attempt to make the insureds' fraud obligations joint. Since the Michigan courts had previously held that the statutory language had to be incorporated verbatim into all fire insurance policies,

the *Ponder* court reformed the policy to comply with the statutorily mandated language that the obligation to refrain from fraud was separate in regard to each insured.

Interestingly, we note that the "Concealment or Fraud" clause of the instant insurance policy similarly attempts to deviate from the Rhode Island statutory standard. *See Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 315 (R.I.1980); *Osborne v. Pacific Ins. Co. of N.Y.,* 91 R.I. 469, 473, 165 A.2d 725, 727 (1960). The policy reads, "We do not provide coverage for *an* insured who has: a) intentionally concealed or misrepresented any material fact or circumstances or b) made false statements or engaged in fraudulent conduct; relating to this insurance." (Emphasis added.)

However, we do not have to reform the instant contract because the insurer is denying coverage based on a nonstatutory clause entitled "Intentional Loss." *See VanMarter v. Royal Indemnity Co.,* 556 A.2d 41, 45 (R.I.1989) (where insurance policies do not conform to statutory requirements, the language of the policy will be disregarded and the contract will be construed to conform to the statute). This nonstatutory clause reads, "We do not insure for loss caused directly or indirectly by any of the following. * * * L. Intentional Loss, meaning any loss arising out of any act committed: (1) by or at the direction of *an* insured; and (2) with the intent to cause a loss." (Emphasis added.) The plaintiff does not argue that this clause is "in-

deemed to be separate, then the innocent spouse may recover his or her interest in the destroyed property. Some of the cases following this view are *Chacon v. American Family Mutual Ins. Co.*, 788 P.2d 748, 750 (Col.1990) (en banc) (no coverage because contract obligation joint); *Republic Ins. Co. v. Jernigan*, 753 P.2d 229 (Colo. 1988) (en banc) (coverage provided because contractual obligations several); *Commercial Union Ins. Co. v. State Farm Fire and Casualty Co.*, 546 F.Supp. 543 (D.Col. 1982); *McCauley Enterprises, Inc. v. New Hampshire Ins. Co.*, 716 F.Supp. 718 (D.Conn.1989); *Steigler v. Ins. Co. of North America*, 384 A.2d 398 (Del.1978); *State Farm Fire and Casualty Ins. Co. v. Kane*, 715 F.Supp. 1558 (S.D.Fla.1989); *Sales v. State Farm Fire and Casualty Co.*, 849 F.2d 1383 (11th Cir.1988) (Georgia law); *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 299 S.E.2d 561 (1983); *Bryant v. Allstate Ins. Co.*, 592 F.Supp. 39 (E.D.Ky. 1984); *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989); *McGory v. Allstate Ins. Co.*, 527 So.2d 632 (Miss. 1988); *Amick v. State Farm Fire and Casualty Co.*, 862 F.2d 704 (8th Cir.1988) (Missouri law); *Woodhouse v. Farmers Union Mutual Ins. Co.*, 241 Mont. 69, 785 P.2d 192 (1990); *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N.H. 242, 29 A.2d 121 (1942); *Lovell v. Rowan Mutual Fire Ins. Co.*, 302 N.C. 150, 274 S.E.2d 170 (1981); *Spezialetti v. Pacific Employers Ins. Co.*, 759 F.2d 1139 (3d Cir.1985) (Pennsylvania law); *Opat v. State Farm Fire & Casualty Ins. Co.*, 542 F.Supp. 1321 (W.D.Penn. 1982), *aff'd*, 755 F.2d 922 (3d Cir.1984); *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 504 A.2d 896 (1986); *McCracken v. Government Employees Ins. Co.*, 284 S.C. 66, 325 S.E.2d 62 (1985); *Hedtcke v. Sentry Ins. Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982).

The other modern view focuses upon who is responsible for the fraudulent act. *Error*, 762 P.2d at 1080. This view always allows the innocent coinsured to recover under the policy, even if the obligation to refrain from arson and fraud is deemed to be joint. According to this theory, the obligation of the *insurer* under the insurance policy is considered to be several as to *each insured. Id.* at 1081. Some of the cases following this reasoning are *Auto-Owners Ins. Co. v. Eddinger*, 366 So.2d 123 (Fla.Dist.Ct.App.1979); *Howell v. Ohio Casualty Ins. Co.*, 130 N.J.Super. 350, 327 A.2d 240 (1974); *Delph v. Potomac Ins. Co.*, 95 N.M. 257, 620 P.2d 1282 (1980); *Kulubis v. Texas Farm Bureau Underwriters Ins. Co.*, 706 S.W.2d 953 (Texas 1986); *Error v. Western Home Ins. Co.*, 762 P.2d 1077 (Utah 1988).

In arguing this case, both parties cite a plethora of cases and urge this court to follow the "prevailing view." Presumably we are to "count up" the cases adhering to each view and join with the view that attracts the most jurisdictions. We decline to follow this approach. If the "prevailing view" is prevailing because it is the better reasoned approach, then we would be persuaded to decide that way. However, we shall not decide our cases purely on the numerical support for a delineated outcome. Accordingly, after considering what we deem to be the better reasoned approach, we adopt the first modern view. Hence we hold that we shall look to the contract to see whether the insureds' obligation to refrain from intentional destruction (arson) is joint rather than separate under the patent language of the contract.

■ On the facts of the instant case, the Association argues that there is a joint obligation of Arlene and Malcolm not to commit arson, based mainly on the word "an" in the exclusion clause. *See supra* note 1 for "Intentional Loss" exclusion clause. In relevant part, the exclusion clause states that no coverage is provided for intentional losses committed "by or at the direction of *an* insured." (Emphasis added.) The Association states that if it had used the words "the insured," then the insureds' obligations would have been separate. By distinction, the Association claims that "an" insured connotes a joint obligation to refrain from intentional losses.

consistent" with the statutorily prescribed clauses. *See Osborne*, 91 R.I. at 473, 165 A.2d at 727.

In reply, plaintiff states that the word "an" in and of itself is ambiguous and does not allow a reasonable insured to realize that he or she has no coverage if another insured commits arson. Further, plaintiff states that the words "the" and "an" are used interchangeably throughout the policy. The plaintiff states that in cases such as this wherein an insurance contract is alleged to be ambiguous, the ambiguity must be resolved in favor of the insured, and thus her obligation must be read as separate from her coinsured.

We have examined the exclusion clause and the entire insurance policy and find no ambiguity. When the Association states that it does "not insure against loss caused directly or indirectly by * * * an insured" who commits the loss intentionally, we think it clear that if *any* insured intentionally commits an act causing loss, no insurance is provided for the loss. Although it may sound simplistic to say that this case turns on the use of the article "an" instead of the article "the," when the exclusion is read in full we are bound to find the clause unambiguous. Moreover, we find support from other jurisdictions for this reasoning. *See, e.g., Amick,* 862 F.2d at 705 (policy void if "you or any other insured" intentionally concealed or misrepresented material facts); *Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d at 1140–42 (no coverage for loss resulting from dishonest act caused "by any insured"); *State Farm Fire and Casualty Ins. Co. v. Kane,* 715 F.Supp. 1558, 1561 (S.D.Fla.1989) (no coverage for loss caused by a fraudulent, dishonest, or criminal act "done by or at the instigation of any insured"); *Bryant v. Allstate Ins. Co.,* 592 F.Supp. at 41 (policy void "if any insured person intentionally conceals or misrepresents material facts or circumstances" and no coverage provided if loss results from neglect by "an insured" or if "an insured" increases risk of loss); *Chacon,* 788 P.2d at 751 ("[t]he majority of courts which have considered this issue have held that 'unlike the phrase "the insured," the phrase "any insured" unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent coinsured'"); *Allstate Ins. Co. v. Freeman,* 432 Mich. 656, 694–700, 443 N.W.2d 734, 752–54 (1989) (excellent discussion of "an," "a," and "the" as used in intentional act exclusion clauses); *Woodhouse,* 785 P.2d at 194 (same intentional loss exclusion as in the instant case "clearly and unequivocally" makes obligations joint); *Pawtucket Mutual Ins. Co. v. Lebrecht,* 104 N.H. 465, 467–68, 190 A.2d 420, 422–23 (1963) (court distinguishes between "the" and "an," and states coverage is provided because "the insured" refers to insured who caused the loss and is seeking coverage under the policy, thus the obligations are separate).

■ We find no ambiguity in the exclusion clause. Both insureds had a joint obligation to refrain from causing intentional loss because the Association did not insure for such a loss. We also reject the plaintiff's argument that such joint-obligation exclusion clauses violate public policy. *See Amick,* 862 F.2d at 706 (not against social policy to allow insurance providers not to insure against intentional losses caused by any insured); *State Farm Fire & Casualty Co. v. Walker,* 157 Wis.2d 459, 471, 459 N.W.2d 605, 610 (Ct.App.1990) (not against public policy to make insureds' obligations joint). Presumably the insurer's lower exposure to liability because of the joint obligations of named insureds is reflected in lower premiums, and if the insured is dissatisfied with the result, he or she is free to purchase another policy naming that person individually as insured.

Accordingly the plaintiff's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case are remanded to the Superior Court.