VICKI AUSTIN, APPELLANT, V. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, APPELLEE.
625 N.W.2d 213

Filed May 4, 2001.   No. S-99-1239.

Tiffany N. Floth and Joseph B. Muller, of Law Offices of Ronald J. Palagi, P.C., for appellant.

Mark C. Laughlin and Tracy J. Edgerton, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is a breach of contract action brought by appellant, Vicki Austin, against appellee, State Farm Mutual Automobile Insurance Company (State Farm). Austin filed a claim with State Farm under her uninsured motorist policy for damages incurred after Jennifer C. White, an uninsured motorist, hit Austin with her car. State Farm declined to pay the damages, claiming that White acted intentionally and that intentional acts are not within the policy coverage. Austin brought suit, and after a trial on the merits, a jury found for State Farm. The trial court entered judgment accordingly. We affirm.

## BACKGROUND

On May 5, 1994, Austin was a passenger in a car driven by Sharilyn Ross, who was attempting to exit a parking lot. White, an uninsured motorist, attempted to cut in front of Ross' car, but Ross did not permit her to do so. Austin testified that White yelled an explative at her, so Austin exited the car and walked

over to White's car. Austin said that White slapped her, then drove off and hit a parked car. Austin said that at that point, she thought the confrontation had ended, so she started to walk back to Ross' car. As she was walking, she noticed White's car coming toward her. White's car then struck Austin, pinning her right leg between White's car and Ross' car.

White, on the other hand, denied yelling an expletive and said that Austin came over to her car, cursed at her, and punched her through her open window. White then slapped Austin, and Austin hit White again. White claimed that the next thing she can remember is seeing Austin pinned between her car and Ross' car. White did not remember hitting a parked car, backing up, or driving toward Austin. After she hit Austin, White left the scene, but she was soon apprehended by the police.

As a result of this incident, Austin suffered a fractured right ankle that required surgery. She filed a claim with State Farm for uninsured motorist benefits under her policy. State Farm denied the claim, stating that an intentional tort is not an accident under the policy. Austin brought this action for breach of contract, and the jury returned a verdict for State Farm.

## ASSIGNMENTS OF ERROR

Austin claims the trial court erred in (1) submitting jury instructions Nos. 9 and 10 to the jury, (2) rejecting Austin's proposed jury instruction No. 4, and (3) overruling Austin's motion for a directed verdict.

## ANALYSIS

### JURY INSTRUCTIONS

Austin first alleges that the trial court's instructions to the jury were erroneous and that the trial court instead should have given one of Austin's tendered instructions to the jury. To establish reversible error from a trial court's refusal to give a requested instruction, an appellant must prove that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *In re Application of SID No. 384*, 259 Neb. 351, 609 N.W.2d 679 (2000). The issue in this case is the first

requirement, namely, whether Austin's tendered instruction was a correct statement of the law.

The dispute regarding the jury instructions in this case stems from a dispute about the meaning of the term "accident" as it is used in Austin's insurance policy. Austin's policy states: "We [State Farm] will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*." (Emphasis in original.) The term "accident" is not defined in the policy.

Austin claims that the term should be defined from the insured's perspective. In that regard, she claims that the trial court should have used her tendered instruction No. 4, which provides:

> The uninsured motorist coverage provides coverage to Plaintiff for bodily injuries caused by an accident. As used in the insurance policy and these Instructions, the term "accident" means an event that Plaintiff did not expect to occur. In determining whether Plaintiff's injuries were the result of an "accident", you may only consider whether, from Plaintiff's point of view, the injuries she sustained were the result of an unusual or unexpected event.

State Farm, on the other hand, argues that the trial court, in instruction No. 9, correctly defined the term according to the ordinary sense of the word without regard to the perspective from which it is viewed. The trial court's instruction No. 9 provides:

> The State Farm policy provides coverage only for bodily injury which is caused by accident. The court instructs you that the word "accident" means an unexpected happening without intention or design.
>
> An accident occurs when injuries are sustained as a result of negligence, recklessness, or wanton misconduct where no intent or purpose to injure is shown.

The trial court also gave instruction No. 10, which defines the terms in instruction No. 9. Instruction No. 10 states in relevant part:

> Recklessly shall mean acting with respect to a material element of an offense when any person disregards a sub-

stantial and unjustifiable risk that the material element exists or will result from his or her conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to the actor, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Intentional means that an act is done with design or purpose, that is, deliberately.

The question in this case is whether the term "accident," which is undefined in State Farm's policy, is to be given its plain and ordinary meaning, or whether the meaning changes because Austin is making a claim under an uninsured motorist policy. If the term is defined according to its plain and ordinary meaning, without regard to the perspective from which it is viewed, then it does not cover intentional torts. As such, the trial court's instruction would be correct, whereas Austin's tendered instruction would not. If, on the other hand, the term's meaning changes in the uninsured motorist context and it is to be defined from Austin's perspective, then the term covers intentional torts. Accordingly, Austin's tendered instruction would be correct and the trial court's instruction would not.

In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000). In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved. *Columbia Nat. Ins. v. Pacesetter Homes*, 248 Neb. 1, 532 N.W.2d 1 (1995). The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998). There is no legal requirement that each word used in an insurance policy must be specifically defined in order to be unambiguous. *Id.*

While the term "accident" is not defined in the policy, we have previously defined it in the liability insurance context as

"an unexpected happening without intention." *Sullivan v. Great Plains Ins. Co.*, 210 Neb. 846, 851, 317 N.W.2d 375, 379 (1982). In its ordinary sense, "accident" means "a happening that is not expected, foreseen, or intended." Webster's New World College Dictionary 8 (3d ed. 1996). The term, in its ordinary sense, has no reference to anyone's perspective. Instead, it refers to an unexpected, unintended, or unforeseen happening, regardless of the perspective from which it is viewed. As such, intentional acts by definition cannot be accidents. See, *Landry v. Dairyland Ins. Co.*, 166 Vt. 634, 701 A.2d 1035 (1997) (word "accident" ordinarily implies lack of intent by responsible parties, rather than victim's lack of foresight); *Roller v. Stonewall Ins. Co.*, 115 Wash. 2d 679, 801 P.2d 207 (1990). We conclude, therefore, that as used in the State Farm policy the word "accident" does not cover intentional torts. To hold otherwise would be to contravene the purpose of the Uninsured and Underinsured Motorist Insurance Coverage Act. We have often stated that the purpose of the act is to give a person injured by an uninsured motorist the same protection he or she would have had if he or she had been injured in an accident caused by an automobile covered by a standard liability policy. *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275 (1999); *Pettid v. Edwards*, 195 Neb. 713, 240 N.W.2d 344 (1976); *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968). Given this purpose, uninsured motorist insurance operates as a substitute liability policy. See *Stephens v. Allied Mut. Ins. Co.*, *supra*. It is clear from the purpose of the act that an insured may only recover from his or her uninsured motorist insurer the amount he or she would have recovered from the uninsured motorist's liability carrier had such motorist been carrying a liability policy.

Under a standard liability policy, intentional acts are excluded from coverage. Indeed, it is against public policy to insure against liability for intentional acts. See *Jones v. Norval*, 203 Neb. 549, 279 N.W.2d 388 (1979). Thus, if White had been covered by a standard liability policy, Austin could not have recovered from White's liability insurer because of the intentional act exclusion in such policy. Because Austin could not recover under a standard liability policy, she likewise cannot recover

under an uninsured motorist policy, given the purpose of the act. To hold otherwise would be to put Austin in a better position than she otherwise would have been if White had carried liability insurance. See *Roller v. Stonewall Ins. Co.*, 115 Wash. 2d at 685, 801 P.2d at 210 (" '[t]he injured party is not entitled to be put in a better position, by virtue of being struck by an underinsured motorist, than she would be had she been struck by a fully insured motorist' ").

We have stated that we liberally construe the Uninsured and Underinsured Motorist Insurance Coverage Act to accomplish the indicated legislative purpose. *Emery v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 619, 239 N.W.2d 798 (1976). However, "we are not free to rewrite the statutes to provide a meaning or purpose they do not contain." *Id.* at 624, 239 N.W.2d at 801. To hold as Austin requests would be to expand the act beyond its intended scope.

### DIRECTED VERDICT

Austin argues that the trial court should have granted her motion for directed verdict because there was no evidence that White intentionally hit her. A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *King v. Crowell Memorial Home, ante* p. 177, 622 N.W.2d 588 (2001).

As State Farm argues, the testimony shows that White and Austin had a verbal argument followed by a physical altercation. There was testimony that both White and Austin took aggressive action toward each other. The testimony also shows that after the physical altercation, White drove her car into a parked car, put her car in reverse and drove around Ross' car, and then drove directly toward Austin. Reasonable minds could certainly differ as to whether or not White intended to hit Austin with her car. As such, the trial court correctly denied Austin's motion for directed verdict.

### CONCLUSION

We conclude, therefore, that as used in the State Farm uninsured motorist policy, the term "accident" does not include

intentional acts. As such, Austin's tendered instruction is an incorrect statement of the law and was correctly refused. We further conclude that based on the evidence adduced at trial, reasonable minds could differ as to whether White intended to hit Austin with her car. Accordingly, we find that the trial court correctly denied Austin's motion for directed verdict.

AFFIRMED.