HELEN VOLQUARDSON, PLAINTIFF, V. HARTFORD INSURANCE
COMPANY OF THE MIDWEST, DEFENDANT.

647 N.W.2d 599

Filed July 12, 2002. No. S-01-972.

Ronald E. Temple, of Gatz, Fitzgerald, Vetter & Temple, for plaintiff.

Thomas H. Cellilli III and Michelle Dreesen Epstein, of Locher, Cellilli, Pavelka & Dostal, L.L.C., for defendant.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In a pending civil action captioned "Helen Volquardson, Plaintiff vs. Hartford Insurance Company of the Midwest, Defendant," No. 4:00CV3340, the U.S. District Court for the District of Nebraska certified six questions of state law to this court under the procedure established by Neb. Rev. Stat. §§ 24-219 through 24-225 (Reissue 1995). We accepted the certification request and hereby answer the certified questions, which concern the interpretation of two insurance policies issued by Hartford Insurance Company of the Midwest (the Hartford) to Helen Volquardson and William J. Volquardson.

## UNCONTESTED FACTS

Pursuant to § 24-221, the U.S. District Court included in its certification request the following uncontested facts relevant to the certified questions of law: Helen is a resident of Cedar County, Nebraska, and is married to William. The Hartford is an insurer licensed and authorized to conduct business in the State of Nebraska.

The Volquardsons owned a residence, outbuildings, and a 1984 Mercury Lynx as joint tenants with rights of survivorship on July 30, 2000. The Volquardsons' residence and outbuildings were insured by a homeowner's policy issued by the Hartford, which specifically provided insurance coverage against peril of fire. The 1984 Mercury Lynx was insured by an automobile liability policy

also issued by the Hartford. Helen and William were named insureds under both policies, and both policies were in effect on July 30, 2000. In 1994, the Hartford had the contents of the Volquardsons' homeowner's policy approved by the director of the Department of Insurance for the State of Nebraska.

On July 30, 2000, at approximately 8:30 a.m., William intentionally set fire to the residence, its contents, the outbuildings, and the 1984 Mercury Lynx. All of the aforementioned property was completely destroyed by the fire. William set the fire as part of a suicide attempt.

Helen was in no way involved in setting fire to the property, nor did she have any actual or constructive knowledge that William was going to set the fire. Furthermore, there is no evidence to indicate that William's actions on July 30, 2000, constituted an act of abuse as that term is defined by Neb. Rev. Stat. § 44-7402(1) (Reissue 1998).

After the fire, Helen timely complied with all conditions precedent to coverage and then made claims against the insurance policies to recover for the destroyed property, but the Hartford refused to pay. On December 22, 2000, Helen filed a complaint in the U.S. District Court for the District of Nebraska alleging she was entitled to a judgment requiring the Hartford to pay her claims for property damage pursuant to the policies. The Hartford filed an answer in which it affirmatively alleged that the intentional acts exclusion in the homeowner's policy precluded coverage for the damage to the residence, its contents, and the outbuildings because William had intentionally burned the property. The Hartford also affirmatively alleged that part D of the insuring agreement in the automobile liability policy, which stated that the Hartford would pay for only "direct and accidental loss" to a covered automobile, prevented Helen from recovering for the damage to the 1984 Mercury Lynx.

The U.S. District Court also provided certain documents for our review and consideration in responding to the certified questions. These documents include the complaint and answer filed in the pending federal action, the two insurance policies issued by the Hartford and identified in the uncontested facts, and the 1943 New York Standard Fire Insurance Policy (1943 NYSFIP) certified by the State of Nebraska, Department of Insurance.

## CERTIFIED QUESTIONS

The U.S. District Court certified the following six questions of state law for resolution by this court:

1. Is the language of the intentional acts exclusion in SECTION [I]-EXCLUSIONS, Paragraph 1.h.1. and 1.h.2 of Hartford's Homeowner's Policy ambiguous?

2. Is the intentional acts exclusion in SECTION [I]—EXCLUSIONS, Paragraph 1.h.1. and 1.h.2 of the Hartford's Homeowner's Policy contrary to the public policy of Nebraska, as expressed by statute and case law, when applied to preclude coverage against peril of fire to an innocent co-insured?

3. Does the intentional acts exclusion in SECTION [I]—EXCLUSIONS, Paragraph 1.h.1 and 1.h.2 of the Hartford's Homeowner's Policy comply with the provisions of §44-501(6), R.R.S. 1998, and provide the substantial equivalent of the minimum provisions of the 1943 New York Standard Fire Insurance Policy?

4. If the answer to Question No. 3 is "no," did the Director of Insurance of the State of Nebraska, pursuant to § 44-501(11), R.R.S. 1998, have the lawful authority in 1994 to approve the variations in Hartford's Homeowners policy notwithstanding its noncompliance with the 1943 New York Standard Fire Insurance Policy?

5. Is the language "direct and accidental loss" in the insuring agreement in PART D—COVERAGE FOR DAMAGE TO YOUR AUTO, Paragraph A. of Hartford's Auto Policy ambiguous?

6. Is the language "direct and accidental loss" in the insuring agreement in PART D—COVERAGE FOR DAMAGE TO YOUR AUTO, Paragraph A. of Hartford's Auto Policy contrary to the public policy of Nebraska, as expressed by statute and case law, when applied to preclude comprehensive coverage to an innocent co-insured?

## ANALYSIS

### INTRODUCTION

 Certain well-established principles of Nebraska law form the foundation for our resolution of the questions of law

certified by the U.S. District Court. An insurance policy is a contract. *Ohio Cas. Ins. Co. v. Carman Cartage Co.*, 262 Neb. 930, 636 N.W.2d 862 (2001); *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000); Neb. Rev. Stat. § 44-102 (Reissue 1998). Parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 607 N.W.2d 814 (2000); *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998). In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contact are clear, they are to be accorded their plain and ordinary meaning. *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001); *Callahan v. Washington Nat. Ins. Co., supra.*

QUESTION ONE

The first certified question asks this court to determine whether the intentional acts exclusion in the Volquardsons' homeowner's policy is ambiguous. The exclusion provides:

**SECTION I — EXCLUSIONS**

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:

. . . .

**h. Intentional Loss**, meaning any loss arising out of any act committed:

**(1)** By or at the direction of an **insured**; and

**(2)** With the intent to cause a loss.

Helen argues that the phrase "an insured" is ambiguous as to whether an innocent coinsured may recover despite the intentional act(s) of a coinsured, because the phrase does not exclude coverage for the intentional act(s) of "any insured." The Hartford argues that the language is not ambiguous and that the plain meaning of the exclusion negates coverage to Helen based upon the intentional acts of her husband, who is "an insured" under the policy.

In Nebraska, a contract, such as an insurance policy, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001); *Callahan v. Washington Nat. Ins. Co., supra*. However, the fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Id.*; *Moller v. State Farm Mut. Auto Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997). Moreover, while an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Callahan v. Washington Nat. Ins. Co., supra*; *American Family Ins. Group v. Hemenway, supra*.

This court has not previously determined whether the phrase "an insured" in an insurance policy clearly and unambiguously creates joint rights and obligations on the part of coinsureds, or whether the phrase is ambiguous and should therefore be construed in favor of a coinsured who does not participate in an excluded loss. Those courts which have addressed this issue have reached strikingly dissimilar conclusions. In *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915 (11th Cir. 1998), for example, the court held that the phrase "an insured" in the homeowner's policy under consideration was ambiguous because it did not clearly impose joint obligations on the part of coinsureds. In determining that an ambiguity existed, the *Benfield* court noted that the phrases "an insured" and "the insured" were used throughout the policy "with apparent interchangeability." *Id.* at 926. The same is true of the Hartford policy under consideration here.

In *McFarland v. Utica Fire Ins. Co.*, 814 F. Supp. 518, 525 (S.D. Miss. 1992), the court reasoned that because the intentional acts exclusion in the property insurance policy under review "with[held] coverage for 'an' act committed by 'an' insured, but not 'an' act committed by 'any' insured," the language was ambiguous and should therefore be construed to not bar an innocent coinsured from recovering. In *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224 (1998), the Supreme Court of Kansas went even

further and concluded that the phrase "any insured" was also ambiguous. The *Brumley* court was interpreting a provision in a homeowner's policy that excluded coverage for bodily injury or property damage " 'expected or intended by any insured.' " 265 Kan. at 811, 963 P.2d at 1226. In its opinion, the *Brumley* court rejected the insurer's argument that use of the phrase "any insured" clearly created a joint obligation, reasoning that "[t]he words 'an' and 'any' are inherently indefinite and ambiguous" and "can and often do have the same meaning." 265 Kan. at 814, 963 P.2d at 1227.

Conversely, other courts have found no ambiguity in similar policy language. For example, the court in *Dolcy v. R.I. Joint Reinsurance Ass'n*, 589 A.2d 313 (R.I. 1991), examined language in a homeowner's policy to determine whether an innocent coinsured could recover for a fire loss caused by the intentional act of her spouse. The Supreme Court of Rhode Island first determined that the issue must be resolved by examining the policy language "to see whether the insureds' obligation to refrain from intentional destruction (arson) is joint rather than separate under the patent language of the contract." *Id.* at 315. The *Dolcy* court concluded that policy language stating that the carrier does " 'not insure against loss caused directly or indirectly by . . . an insured' " who commits the loss intentionally was an unambiguous pronouncement that no coverage was provided for a loss caused intentionally by any insured. 589 A.2d at 316.

The Supreme Court of Iowa employed similar reasoning in resolving questions certified to it by the U.S. District Court for the Southern District of Iowa in *Vance v. Pekin Ins. Co.*, 457 N.W.2d 589 (Iowa 1990). In the context of a claim by an innocent spouse to recover under a homeowner's policy for a fire loss intentionally caused by her husband, the *Vance* court examined a policy provision stating that coverage is excluded for " '[i]ntentional Loss . . . committed . . . by or at the direction of *an* insured.' " *Id.* at 592. Noting that the case turned on whether the word "an" was ambiguous, the court concluded that it was not, stating:

> The word "an" is a functional word used "before singular nouns when the referent is unspecified (for example, a man overboard)." *Webster's Ninth New Collegiate Dictionary* 45 (1985). The words "an insured" in the above exclusion

means [sic] an unspecified insured who commits arson. In short, if any insured commits arson, all insureds are barred from recovering.

*Id.* at 593. Accord, *Bryant v. Allstate Ins. Co.*, 592 F. Supp. 39, 41 (E.D. Ky. 1984) (employing contract analysis and determining phrase "an insured" to be unambiguous and "clear as spring water"); *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685 (Utah 1999) (holding phrase "an insured" in intentional acts of exclusion provision unambiguously barred innocent coinsured from recovering for damage to insured property caused by arson of coinsured); *Woodhouse v. Farmers Union Mut. Ins. Co.*, 241 Mont. 69, 785 P.2d 192 (1990) (same); *Allstate Ins v Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989) (interpreting "an insured" to unambiguously refer to "all" or "any insured" under homeowner's policy); *Farmers Insurance v. Hembree*, 54 Wash. App. 195, 773 P.2d 105 (1989) (holding "an insured" includes anyone insured under homeowner's policy).

As noted, it is well-settled Nebraska law that an insurance policy is a contract between the insurer and the insured, whose respective rights and obligations must be determined by application of contract principles. See, e.g., *Ohio Cas. Ins. Co. v. Carman Cartage Co.*, 262 Neb. 930, 636 N.W.2d 862 (2001); *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001); *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000). The Hartford's homeowner's policy defines various losses for which no insurance is provided, including intentional losses "arising out of any act committed [b]y or at the direction of an **insured**." We conclude that this means, simply and unambiguously, that if a loss is caused intentionally by someone who is insured under the policy, it is not covered. Thus, in response to the first certified question, we find no ambiguity in the intentional acts exclusion found at section I exclusions, paragraph 1h(1) and (2), of the Hartford's homeowner's policy.

## QUESTION TWO

The second certified question requires this court to determine whether the intentional acts exclusion, which we have now determined to be unambiguous, is nevertheless contrary to the public

policy of this state when applied to preclude coverage against peril of fire to an innocent coinsured. We understand this question to be separate and distinct from the issue of whether the exclusion complies with Neb. Rev. Stat. § 44-501 (Reissue 1998), which is the subject of the third certified question. Accordingly, in response to the second question, we consider whether Nebraska has an articulated public policy that specifically recognizes rights of an innocent coinsured with respect to application of an intentional acts exclusion in a homeowner's policy.

■■■ "Public policy" is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, the principles under which the freedom of contract or private dealings are restricted by law for the good of the community. *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 607 N.W.2d 814 (2000). We have also noted that " '[i]t is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state.' " *Continental Western Ins. Co. v. Conn*, 262 Neb. 147, 157, 629 N.W.2d 494, 501 (2001), quoting *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994). The only Nebraska statute dealing specifically with innocent co-insureds in the context of property and casualty insurance is Neb. Rev. Stat. § 44-7406(6) (Reissue 1998), which was enacted in 1998 as part of the Unfair Discrimination Against Subjects of Abuse in Insurance Act. See 1998 Neb. Laws, L.B. 1035. The uncontested facts of this case include a statement indicating that there is no evidence of "abuse" as defined by the aforementioned act, and we therefore do not consider § 44-7406(6) in our analysis of this certified question.

■■ This court, like others, has stated that it is against public policy to insure against liability for intentional acts. See *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001). See, also, *Ohio Cas. Ins. Co. v. Clark*, 583 N.W.2d 377 (N.D. 1998); *State Farm Fire & Cas. Co. v. Falley*, 23 Kan. App. 2d 21, 926 P.2d 664 (1996); *Nationwide Mut. Ins. Co. v. Finkley*, 112 Ohio App. 3d 712, 679 N.E.2d 1189 (1996); *Waller v. Truck Ins. Exchange*, 11 Cal. 4th 1, 900 P.2d 619, 44 Cal. Rptr. 2d 370 (1995). In *Continental Ins. Co. v. Gustav's Stable Club, Inc.*, 211 Neb. 1, 12, 317 N.W.2d 734, 740 (1982), we stated: " 'The rule

as to partnerships or joint ventures is that innocent partners and joint venturers are also barred from recovery where the arson is perpetrated by a partner or a joint venturer.' " (Quoting *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch.*, 267 Cal. App. 2d 381, 73 Cal. Rptr. 182 (1968).) However, we have never specifically considered the question of whether, in the context of homeowner's insurance, public policy would bar enforcement of an intentional acts exclusion against an innocent coinsured whose spouse commits the intentional act that results in loss.

Helen argues that this court's recent holding in *Allstate Ins. Co. v. LaRandeau*, 261 Neb. 242, 622 N.W.2d 646 (2001), indicates that Nebraska public policy requires an insurer to compensate an innocent coinsured in her situation. Although *LaRandeau* did involve a payment by an insurer to an innocent coinsured whose spouse had caused a fire loss, the issue of whether such payment was required by public policy notwithstanding an intentional acts exclusion was not presented. The insurer in *LaRandeau* voluntarily paid one-half of the loss to the innocent coinsured and then sought to recover that amount in a subrogation claim against the insured spouse who intentionally caused the loss. We held that the insurer had a right to do so, reasoning that the intentional act of arson was not covered under the homeowner's policy and that the insurer's right of subrogation served the legitimate purpose of placing ultimate responsibility for the loss upon the intentional wrongdoer. The holding in *LaRandeau* thus does not support Helen's position. We conclude that there is no public policy specifically articulated by Nebraska statutes or case law which would preclude application of the intentional acts exclusion at issue here to negate coverage against peril of fire to an innocent coinsured under the uncontested facts presented in this case.

QUESTION THREE

The third certified question asks this court to determine whether the intentional acts exclusion in section I, exclusions, paragraph 1h(1) and (2), of the Hartford's homeowner's policy complies with the provisions of § 44-501 and provides the substantial equivalent of the minimum provisions of the 1943 NYSFIP. Section 44-501 reads in pertinent part:

No policy or contract of fire and lightning insurance, including a renewal thereof, shall be made, issued, used, or delivered by any insurer or by any agent or representative thereof on property within this state other than such as shall conform as nearly as practicable to blanks, size of type, context, provisions, agreements, and conditions with the 1943 Standard Fire Insurance Policy of the State of New York, a copy of which shall be filed in the office of the Director of Insurance as standard policy for this state, and no other or different provision, agreement, condition, or clause shall in any manner be made a part of such contract or policy or be endorsed thereon or delivered therewith except as provided in subdivisions (1) through (11) of this section.

. . . .

(6) . . . The Director of Insurance may approve any form of policy which includes coverage against the peril of fire and substantial coverage against other perils without complying with the provisions of this section *if such policy with respect to the peril of fire includes provisions which are the substantial equivalent of the minimum provisions of the standard policy provided for in this section* and if the policy is complete as to all its terms without reference to any other document.

(Emphasis supplied.)

The 1943 NYSFIP referred to in § 44-501 exclusively utilizes the phrase "the insured." For example, the concealment and fraud exclusion in the policy provides:

This entire policy shall be void if, whether before or after a loss, *the insured* has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of *the insured* therein, or in case of any fraud or false swearing by *the insured* relating thereto.

(Emphasis supplied.)

In resolving the first certified question herein, we determined that the phrase "an insured" in the intentional acts exclusion in the Hartford's homeowner's policy created a joint obligation among coinsureds. Thus, if a loss is caused by the intentional act of an insured, an innocent coinsured would be precluded from

recovery under the plain language of the policy. Although we have not previously addressed the issue, other courts have determined that the phrase "the insured" in an insurance policy creates a several obligation which excludes coverage only as to the individual insured who committed the proscribed act. For example, in *Lane v. Security Mut. Ins. Co.*, 96 N.Y.2d 1, 5, 747 N.E.2d 1270, 1272, 724 N.Y.S.2d 670, 672 (2001), the Court of Appeals of New York held that the consistent use of the phrase "the insured" in that state's statutory standard fire insurance policy "delineates independent liabilities and obligations as to each insured to refrain from incendiary acts." See, also, *Watson v. United Services Auto. Ass'n*, 566 N.W.2d 683, 691 (Minn. 1997) (holding use of phrase "the insured" in Minnesota's standard fire insurance policy "evinces a general intent to compensate an innocent co-insured spouse despite the intentional acts of the other insured spouse"); *Fireman's Fund v. Dean*, 212 Ga. App. 262, 441 S.E.2d 436 (1994) (holding use of phrase "the insured" must be construed to provide several obligations to each coinsured); *Osbon v. National Union Fire Ins. Co.*, 632 So. 2d 1158 (La. 1994) (holding use of phrase "the insured" is singular and refers only to insured responsible for causing loss); *Ponder v. Allstate Ins. Co.*, 729 F. Supp. 60, 61 (E.D. Mich. 1990) (holding under Michigan law that standard policy which states that it is void " 'if . . . *the* insured has willfully concealed or misrepresented' " a material fact or circumstance means that "the policy is void only as to the fraudulent insured party, and that innocent insureds may still recover" (emphasis in original)). We have found no authority to the contrary and agree that the phrase "the insured" in an insurance policy denotes a several obligation, as distinguished from the joint obligation created by the phrase "an insured."

Next, we must determine whether the Hartford's homeowner's policy provided insurance coverage against peril of fire that was the "substantial equivalent" of the fire coverage provided by the 1943 NYSFIP. There is an obvious substantive difference between joint and several obligations of multiple insureds with respect to a coverage exclusion based upon conduct. Where the obligation is joint, commission of a proscribed act by one insured voids coverage as to all. However, where the obligation is several, the proscribed conduct defeats the policy

rights of the insured who committed the act but not those of an innocent coinsured.

The Hartford argues that we need not consider this difference here because the 1943 NYSFIP does not contain an intentional acts exclusion. It relies upon *Dolcy v. R.I. Joint Reinsurance Ass'n*, 589 A.2d 313 (R.I. 1991), and *Traders & General Ins. Co. v. Freeman*, 81 F. Supp. 2d 1070 (D. Or. 2000), to support its argument. In *Dolcy,* the court concluded that the phrase "any insured" in an intentional acts exclusion unambiguously created a joint obligation which barred recovery by an innocent coinsured. In a footnote, the court noted a "developing train of thought" indicating that a joint obligation can be judicially reformed to be several if shown to be inconsistent with a state's standard fire insurance policy. *Dolcy*, 589 A.2d at 314 n.1. However, the court noted that it need not consider reformation because the intentional acts exclusion was a "nonstatutory clause" and there was no argument that it was inconsistent with statutory requirements. *Id.*

In *Traders & General Ins. Co. v. Freeman, supra*, the court similarly determined that the phrase "any insured" in an intentional acts exclusion created a joint obligation. The court rejected an argument that the exclusion, so construed, was inconsistent with Oregon's statutory standard policy language by reasoning that the standard policy did not include an intentional acts exclusion. While other exclusions in the standard policy used the phrase "the insured," the federal court applying Oregon law determined that in the absence of express legislative direction, it could not conclude that the Oregon Legislature intended to impose a several obligation requirement with respect to an intentional acts exclusion. On this point, the court in *Traders & General Ins. Co.* cited *Lane v. Security Mut. Ins. Co.*, 256 A.D.2d 1100, 682 N.Y.S.2d 777 (1998), for the proposition that a statutory standard policy would not be extended to invalidate an intentional loss exclusion "when the standard policy was 'silent with respect to such an exclusion' and did not define the term 'insured.' " *Traders & General Ins. Co.*, 81 F. Supp. 2d at 1080. The *Lane* case was subsequently reversed, however, by the Court of Appeals of New York. See *Lane v. Security Mut. Ins. Co.*, 96 N.Y.2d 1, 747 N.E.2d 1270, 724 N.Y.S.2d 670 (2001). In that opinion, the court held that the standard policy's use of the phrase

"the insured" created a several obligation for coinsureds and that the intentional acts exclusion under review, which created a joint obligation for coinsureds by its use of the phrase "an insured," was not in conformity with the statutory requirement that fire policies offer the same level of coverage as the standard policy.

In *Watson v. United Services Auto. Ass'n*, 566 N.W.2d 683 (Minn. 1997), the Minnesota Supreme Court also held that an intentional acts exclusion utilizing the phrase "an insured" conflicted with the Minnesota standard fire insurance policy, notwithstanding the fact that the standard policy did not contain an intentional loss exclusion. The court reasoned that the standard policy did contain numerous exclusions based upon conduct of "the insured" and that the standard policy therefore indicated an intent to create several obligations on the part of coinsureds. It therefore held that insofar as the policy in question excluded coverage for an innocent coinsured, it conflicted with the standard policy and must be reformed. See, also, *Borman v State Farm*, 446 Mich. 482, 498, 521 N.W.2d 266, 273 (1994) (holding intentional acts exclusion covered same subject matter as concealment or fraud exclusion in standard policy and that its use of phrase " 'you or any other insured' " was inconsistent with phrase "the insured" in standard policy); *Osbon v. National Union Fire Ins. Co.*, 632 So. 2d 1158 (La. 1994) (holding intentional acts exclusion precluding recovery by innocent coinsured conflicted with that state's standard policy despite fact that standard policy did not include intentional acts exclusion, where standard policy utilized phrase "the insured").

We are persuaded by the reasoning of the Minnesota Supreme Court in *Watson*. Although the 1943 NYSFIP does not contain an intentional acts exclusion, it does provide for various circumstances in which coverage can be defeated by conduct of "the insured." The 1943 NYSFIP states that it shall be void if "the insured has wilfully concealed or misrepresented any material fact" or in the case of "any fraud or false swearing by the insured" relating to the policy. A loss is also excluded if caused by "neglect of the insured to use all reasonable means to save and preserve the property at and after a loss." The 1943 NYSFIP further provides that the insurer shall not be liable for loss occurring "while the hazard is increased

by any means within the control or knowledge of the insured." Thus, while there is no specifically designated intentional acts exclusion in the 1943 NYSFIP, it includes other provisions dealing generally with the insurer's right to void coverage based upon conduct of "the insured." In each instance, the standard policy uses language indicative of a several obligation whereby the insured bears the responsibility for his or her own conduct. We find no provision in the 1943 NYSFIP creating a joint obligation whereby the wrongful actions of one insured could prejudice the rights of an innocent coinsured. Accordingly, in response to the third certified question, we determine that the intentional acts exclusion in section I, exclusions, paragraph 1h(1) and (2), of the Hartford's homeowner's policy does not comply with the provisions of § 44-501(6) because it does not provide the substantial equivalent of the minimum provisions of the 1943 NYSFIP.

## QUESTION FOUR

Having reached this conclusion, we proceed to the fourth certified question, which asks this court to determine whether the Director of Insurance of the State of Nebraska, pursuant to § 44-501(11), had lawful authority in 1994 to approve the variations in the Hartford's homeowner's policy notwithstanding its noncompliance with the 1943 NYSFIP. Section 44-501(11) provides: "The Director of Insurance may approve any form of policy with variations in terms and conditions from the standard policy provided for in this section." There is obvious tension between this provision and § 44-501(6), which authorizes the Director of Insurance to authorize fire insurance policies which are the "substantial equivalent" of the 1943 NYSFIP.

We recognized but were not required to resolve this tension in *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999). At issue there was an exclusion in a fire insurance policy, which the Director of Insurance approved on July 14, 1988. We held that because the exclusion had the effect of reducing the coverage afforded under the 1943 NYSFIP, the Director of Insurance lacked authority to approve it under the "substantial[ly] equivalent" language of § 44-501(6). Moreover, we held that the district court erred in determining that the approval was pursuant to

§ 44-501(11) because that section did not become effective until after the date of approval.

In the present case, both § 44-501(6) and (11) were in effect when the Hartford's homeowner's policy was approved by the Director of Insurance in 1994. Whether § 44-501(11) authorizes the Director of Insurance to approve an exclusion which reduces fire insurance coverage below the minimum provisions of the 1943 NYSFIP requires interpretation of § 44-501. Statutory interpretation presents a question of law. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001); *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001); *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001). When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Rodriguez v. Monfort, Inc., supra.* A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *In re Interest of Sabrina K., supra*; *Rodriguez v. Monfort, Inc., supra*; *Hatcher v. Bellevue Vol. Fire Dept.*, 262 Neb. 23, 628 N.W.2d 685 (2001).

If read literally to give the Director of Insurance authority to approve a fire insurance policy form without regard to whether it provides the minimum coverage afforded under the 1943 NYSFIP, § 44-501(11) would nullify the requirement in § 44-501(6) that in order to be approved, the policy forms must provide the "substantial equivalent" of the fire coverage provided by the standard policy. Indeed, if § 44-501(11) is to be given the expansive interpretation urged by the Hartford, every provision of § 44-501 except subsection (11) would be rendered meaningless. In the absence of clear legislative intent, the construction of a statute will not be adopted which has the effect of nullifying another statute. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001); *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000). A court may examine the legislative history of the act in question in order to ascertain the intent of the Legislature. *State ex rel. Stenberg v. Moore*, 258

Neb. 199, 602 N.W.2d 465 (1999); *In re Estate of Nelson,* 253 Neb. 414, 571 N.W.2d 269 (1997). We find it necessary to examine the legislative history of § 44-501(11) to determine its potentially nullifying effect on the rest of the provisions of § 44-501.

The provision now codified at § 44-501(11) was included in L.B. 92, which was enacted in 1989. 1989 Neb. Laws, L.B. 92. According to the Introducer's Statement of Intent, L.B. 92 was the work product of a task force appointed to conduct an interim study "on the necessity, feasibility and desirability of rewriting, updating and reorganizing Nebraska's insurance statutes." Committee on Banking, Commerce and Insurance, 91st Leg., 1st Sess. (Jan. 23, 1989). The statement of intent relates that the stated purpose of L.B. 92 was "to modernize and restructure Nebraska's insurance laws and to eliminate obsolete and redundant provisions in Chapter 44 of the Nebraska Revised Statutes."

In the introducer's opening remarks at a committee hearing on L.B. 92, he stated:

> The basic purpose of the task force was to revise and update Nebraska insurance law *not with an idea of making controversial alterations but simply to replace obsolete language, rearrange confusing language, update standards which over time have grown inadequate and which need to be raised or altered.* It has had the general obligation to make our law more readable, more contemporaneous, and to reduce unnecessary duplicative actions which over time have sprung up in our insurance law.

(Emphasis supplied.) Committee on Banking, Commerce and Insurance Hearing, 91st Leg., 1st Sess. 2 (Jan. 23, 1989). The introducer of the bill then discussed "some of the most critical" amendments embodied in the bill, *id.,* but did not discuss the provision which became § 44-501(11). He expressed the view that the proposed amendments "do not operate in anyway [sic] to harm the consumer." *Id.* at 5.

The Director of Insurance testified that L.B. 92 was just "sort of the clean-up bill." *Id.* at 7. There was no substantive discussion of the amendment to § 44-501 during the committee hearing or floor debate on L.B. 92. The only legislative history relative to the current § 44-501(11) is found in a 13-page synopsis of L.B. 92 summarizing 261 amendments included in the bill. Item No. 107

on this list reads: "[A]mend 44-501 to authorize the director to approve policy forms which deviate from the New York Standard Fire Policy." Statement of Intent, Committee on Banking, Commerce and Insurance, 91st Leg., 1st Sess. (Jan. 23, 1989). While this statement obviously makes clear that the purpose of § 44-501(11) is to give the Director of Insurance the power to approve policy forms that deviate from the 1943 NYSFIP, it says nothing about the Legislature's intent to repeal the remainder of § 44-501 by implication. In the absence of any indication of such an intent, we conclude that § 44-501(11) must be read in pari materia with § 44-501(6) to authorize the Director of Insurance to approve fire insurance policy forms differing from the 1943 NYSFIP only if the provisions are the substantial equivalent of the minimum provisions of the 1943 NYSFIP. Consequently, in response to the fourth certified question, we conclude that the Director of Insurance did not have lawful authority in 1994 to approve the variations in the Hartford's homeowner's policy because such variations were not the substantial equivalent of the minimum provisions of the 1943 NYSFIP.

QUESTION FIVE

In the fifth certified question, we are asked to determine whether the phrase "direct and accidental loss" in part D, paragraph A, of the Hartford's automobile policy is ambiguous. We understand this question, in its fullest scope, to be asking this court to determine whether Helen is entitled to coverage under the automobile policy.

Part D, paragraph A, of the automobile policy provides:

We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one [sic] **your covered auto** or **non-owned auto** results from the same **collision**, only the highest applicable deductible will apply. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other than Collision Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

> If there is a loss to a **non-owned auto,** we will provide the broadest coverage applicable to any [sic] **your covered auto** shown in the Declarations.

(Emphasis in original.)

The policy declarations page lists four covered automobiles, including a 1984 Mercury Lynx GS which is shown to have "other than collision" coverage only. The insuring agreement in part D also provides:

> Loss caused by the following is considered other than **collision**:
>
> 1. Missiles or falling objects;
> 2. Fire;
> 3. Theft or larceny;
> 4. Explosion or earthquake;
> 5. Windstorm;
> 6. Hail, water or flood;
> 7. Malicious mischief or vandalism;
> 8. Riot or civil commotion;
> 9. Contact with bird or animal; or
> 10. Breakage of glass.

The policy does not define the phrase "direct and accidental loss." We have defined the term "accident" in the context of liability insurance as " 'an unexpected happening without intention or design.' " *Sullivan v. Great Plains Ins. Co.*, 210 Neb. 846, 851, 317 N.W.2d 375, 379 (1982), quoting 45 C.J.S. *Insurance* § 829 (1946). More recently, in the context of uninsured motorist coverage, we stated:

> In its ordinary sense, "accident" means "a happening that is not expected, foreseen, or intended." Webster's New World College Dictionary 8 (3d ed. 1996). The term, in its ordinary sense, has no reference to anyone's perspective. Instead, it refers to an unexpected, unintended, or unforeseen happening, regardless of the perspective from which it is viewed. As such, intentional acts by definition cannot be accidents.

*Austin v. State Farm Mut. Auto Ins. Co.*, 261 Neb. 697, 702, 625 N.W.2d 213, 217 (2001). We further noted that because uninsured motorist coverage operates as a substitute liability policy, the term "accident" should be defined in the same manner.

Unlike the uninsured motorist provision at issue in *Austin*, however, the comprehensive automobile coverage at issue here includes language which requires consideration of the perspective from which an event is deemed to be an accident. The specific perils included in the insuring agreement for "direct and accidental loss" caused by "other than collision" include such forces as earthquake, windstorm, and hail, which, by their nature, are not intended or foreseen. Also specifically covered, however, are losses caused by crimes against property such as theft, larceny, and vandalism, which are intentional acts on the part of the perpetrator but are unexpected and unforeseen by the victimized property owner. Thus, the phrase "accidental loss," read in context with the other provisions of the comprehensive coverage, may encompass damage to an insured vehicle caused by the intentional acts of third persons. See 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 156:20 at 156-35 (1998).

Nevertheless, while the phrase "direct and accidental loss" in this policy is more expansive than the term "accident" in the uninsured motorist policy at issue in *Austin*, it is not ambiguous. The only reasonable interpretation of the aforementioned phrase is that an insured can recover for property damage caused either by truly unforeseen events *or by the intentional act of a third party*. Therefore, a determination of whether Helen is entitled to coverage depends upon a subsequent analysis of whether the Hartford's automobile policy imputes William's intentional acts to Helen, or whether the policy considers William's intentional acts to be those of a third party with respect to Helen. In other words, to determine whether Helen is entitled to recovery, we must also decide whether the automobile policy creates joint or several obligations.

In the definitions section of the automobile policy, the following is provided: "A. Throughout this policy, **you** and **your** refer to: **1.** The **named insured** shown in the Declarations; and **2.** *The spouse if a resident of the same household.*" (Emphasis supplied.) This definition unequivocally indicates that the term "your" refers jointly to Helen and William, who were spouses residing in the same household. Therefore, part D, paragraph A, of the automobile policy's insuring agreement for "direct and accidental loss to *your* **covered auto**" (emphasis supplied) can only reasonably be read to apply to both Helen and William

jointly. As such, William's actions were not those of a third party, but, for purposes of the automobile policy, those of both Helen and William. Consequently, because the loss was not caused by the intentional act of a third party, but, rather, by an insured under the policy, Helen does not have coverage.

## QUESTION SIX

The sixth and final certified question asks this court to determine whether the phrase "direct and accidental loss" in the insuring agreement in part D, paragraph A, of the Hartford's automobile policy is contrary to the public policy of Nebraska, as expressed by statute and case law, when applied to preclude comprehensive coverage to an innocent coinsured. We conclude, for the reasons articulated in our discussion of the second certified question, that such an application would not be contrary to public policy.

## CONCLUSION

To summarize, we respond to the certified questions of law as follows:

1. The language of the intentional acts exclusion in section I, exclusions, paragraph 1h(1) and (2), of the Hartford's homeowner's policy is not ambiguous.

2. The intentional acts exclusion in section I, exclusions, paragraph 1h(1) and (2), of the Hartford's homeowner's policy is not contrary to the public policy of Nebraska, as expressed by statute and case law, when applied to preclude coverage against peril of fire to an innocent coinsured.

3. The intentional acts exclusion in section I, exclusions, paragraph 1h(1) and (2), of the Hartford's homeowner's policy does not comply with the provisions of § 44-501(6) in that it does not provide the substantial equivalent of the minimum provisions of the 1943 NYSFIP.

4. The Director of Insurance of the State of Nebraska, pursuant to § 44-501(11), did not have lawful authority in 1994 to approve the variations in the Hartford's homeowner's policy notwithstanding its noncompliance with the 1943 NYSFIP.

5. The language "direct and accidental loss" in the insuring agreement in part D, paragraph A, of the Hartford's automobile policy is not ambiguous.

6. The language "direct and accidental loss" in the insuring agreement in part D, paragraph A, of the Hartford's automobile policy is not contrary to the public policy of Nebraska, as expressed by statute and case law, when applied to preclude comprehensive coverage to an innocent coinsured.

Pursuant to Neb. Rev. Stat. § 24-225 (Reissue 1995), this opinion stating the law governing the certified questions shall be sent by the clerk under the seal of the Nebraska Supreme Court to the U.S. District Court for the District of Nebraska and to the parties.

JUDGMENT ENTERED.