CONTINENTAL CASUALTY COMPANY, APPELLEE, V.
WALTER M. CALINGER, APPELLANT, AND KAY KONZ, APPELLEE.

657 N.W.2d 925

Filed March 21, 2003.   No. S-02-565.

John J. Reefe, Jr., for appellant.

Dean F. Suing, of Katskee, Henatsch & Suing, for appellee Continental Casualty Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In this appeal, we decide whether an agreement reached before the issuance of an insurance policy can provide coverage when the terms of the agreement are contrary to the express terms of the policy later issued to the insured. Continental Casualty Company (CNA) sought a declaratory judgment holding that CNA was not required to provide coverage for Walter M. Calinger for a $1.5 million judgment rendered against him. In his answer and counterclaim, Calinger alleged that the terms of the insurance contract were provided by a letter from his insurance broker rather than by the policy language. Calinger, however, did not seek to reform the policy. The district court entered summary judgment for CNA.

We conclude that an agreement predating the issuance of an insurance policy cannot directly provide coverage different from that in the policy. Instead, the insured must first seek to reform the

policy in equity to conform to the agreement. Because Calinger did not seek to reform the policy, we affirm.

## FACTUAL BACKGROUND

Underlying this case is a legal malpractice action brought by Kay Konz against Calinger. The circumstances giving rise to the malpractice case occurred in July 1988 when Calinger represented Konz in proceedings before the Iowa Industrial Commission. Konz filed suit against Calinger in May 1992, and the court entered a $1.5 million judgment for her in August 1993. In June 2001, Konz filed a claim with CNA, asserting that CNA was required to provide coverage to Calinger under an insurance policy that it had issued to him in 1990. CNA denied the claim and filed this declaratory judgment action.

It is undisputed that sometime between December 1989 and February 1990, Calinger purchased CNA legal malpractice insurance. The parties, however, dispute if the terms of the insurance contract are provided by the policy or by an agreement that Calinger reached with Doris Goodwin, the insurance broker who sold him the insurance.

### POLICY LANGUAGE

CNA argues that the terms of the policy issued to Calinger govern the scope of coverage. The policy clearly states in several places, including on the front page, that it is written on a " 'claims-made' basis." A claims-made policy is "[a]n agreement to indemnify against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred." Black's Law Dictionary 809 (7th ed. 1999). The policy language also provided that CNA had no obligation for a claim, unless the claim was made against Calinger and reported to CNA during the policy term. Here, the policy term was December 29, 1989, to December 29, 1990. Konz did not file her malpractice action until 1992, and no claim was reported to CNA until 2001. Thus, if CNA's argument that the policy governs the scope of coverage is correct, the insurance does not cover the Konz claim.

### LETTERS

Calinger does not dispute that under the unambiguous terms of the policy, CNA has no obligation to provide coverage for the

Konz claim. Instead, he claims that when he purchased the policy, he and CNA, acting through Goodwin, reached an agreement about the scope of coverage. Calinger argues that this agreement, instead of the policy, should provide the terms of the contract. He contends that because a question exists whether the terms of the agreement with Goodwin are broad enough to cover the Konz claim, the court erred in granting summary judgment.

To support his argument, Calinger relies on an exchange of letters between him and Goodwin. On January 4, 1990, Goodwin sent a letter to Calinger, apparently in response to an application for insurance. It states:

> Just received a memo from the Company [CNA] stating that they can offer your firm coverage for $1,000,000 per claim, $1,000,000 aggregate, with a $1,000 deductible, and WITH FULL PRIOR ACTS COVERAGE, for an annual premium indication of $1,721.00, to be effective December 29, 1989.
>
> There is also available at an additional annual premium of $30.00 per attorney Defendants Reimbursement. See enclosed and let us know if you desire this coverage.
>
> If this would meet with your approval send your request to issue and your check for the full annual premium to this office by January 18, 1990, for processing.

(Emphasis in original.)

Calinger's secretary responded to the letter from Goodwin on January 18, 1990. The January 18 letter states: "Enclosed please find Mr. Calinger's check . . . in the amount of $1,751.00 for *the coverage stated in your letter dated January 4, 1990.* This check is for the annual premium of $1,721.00, and the added annual coverage of $30.00 for the Defendants Reimbursement." (Emphasis supplied.)

According to Calinger, the January 4, 1990, letter does not offer claims-made coverage. Rather, he construes the language "WITH FULL PRIOR ACTS COVERAGE" in the January 4 letter as offering coverage for any act occurring before the effective date of the policy, regardless of when the claim was made. Under this interpretation of the language in the January 4 letter, the CNA insurance would cover the Konz claim because the acts giving rise to the Konz claim occurred before the effective date of the policy.

## PROCEDURAL BACKGROUND

CNA brought a declaratory judgment action against Konz and Calinger. In its petition, CNA sought a declaration that no coverage existed under the policy. Calinger denied the allegations in CNA's petition and filed a counterclaim in which he asked the court to find that CNA was required to represent him in the Konz action and to pay any damages arising from the action. Calinger did not ask the court to reform the policy so that it reflected the alleged agreement that he reached with Goodwin. CNA moved for summary judgment against Calinger and Konz.

The district court granted the motion as to both parties. In rejecting Calinger's argument that the letters governed the scope of coverage, the court found that "no reasonable fact finder could construe the letter which Calinger received from his broker as constituting the contract that he had with the insurance company." Only Calinger appealed.

## ASSIGNMENT OF ERROR

Calinger assigns, consolidated and restated, that the district court erred in its entry of summary judgment for CNA.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2002) (proposition to be used only in case where summary judgment from which appeal is taken was entered on or after September 1, 2001).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Day v. Heller*, 264 Neb. 934, 653 N.W.2d 475 (2002).

■ In an appellate review, the grant of a motion for summary judgment may be affirmed on any ground available to the trial court, even if it is not the same reasoning the trial court relied upon. *Id.*

## ANALYSIS

Calinger argues that a question of disputed fact exists whether he reached an agreement with Goodwin before the policy was issued. We agree that a disputed fact question exists. But the mere existence of a disputed fact question is not enough to preclude summary judgment. The fact question must be material. See *Day v. Heller, supra.* The disputed fact question in this case is only material if an agreement predating the issuance of an insurance policy can provide coverage when the terms of the agreement are contrary to the express terms of the policy later issued to the insured.

We addressed the legal question presented by this case in *Rodine v. Iowa Home Mutual Cas. Co.*, 171 Neb. 263, 106 N.W.2d 391 (1960). We said:

> [I]f it is contended by an insured that a policy issued does not conform to the policy allegedly ordered from the agent, the remedy of the insured is not a suit at law . . . but[, rather,] the proper remedy is for a reformation of the policy to conform to the alleged oral understanding. . . . A litigant cannot, however, disregard the written contract as evidenced by a policy of insurance issued to him and have an action at law upon an alleged oral agreement inconsistent with the policy or a recovery not warranted by the policy.

*Id.* at 280, 106 N.W.2d at 400.

Here, CNA brought a declaratory judgment action against Calinger. Calinger sought to defend the lawsuit and to file his own counterclaim because the agreement with Goodwin, rather than the policy, provided coverage. *Rodine* forbids this type of direct reliance on an agreement that precedes the issuance of the policy. Calinger should have filed a counterclaim in equity seeking to reform the policy language. Having failed to do this, the question whether he reached an agreement with Goodwin is immaterial. The plain and unambiguous language of the policy controls, and CNA had no obligation to provide coverage to Calinger.

## CONCLUSION

The district court did not err in granting summary judgment for CNA. We affirm.

AFFIRMED.