CITY OF SCOTTSBLUFF, A POLITICAL SUBDIVISION OF THE
STATE OF NEBRASKA, APPELLANT, V. EMPLOYERS MUTUAL
INSURANCE COMPANY, AN INSURANCE COMPANY
AUTHORIZED TO DO BUSINESS IN NEBRASKA, APPELLEE.

658 N.W.2d 704

Filed April 4, 2003.    No. S-02-398.

Paul E. Hofmeister, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, P.C., L.L.O., and Steven C. Smith, of Pahlke, Smith, Snyder, Petitt & Eubanks, P.C., L.L.O., for appellant.

Terrance O. Waite and Keith A. Harvat, of Waite, McWha & Harvat, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

The City of Scottsbluff is suing for coverage under the insurance contract it has with Employers Mutual Insurance Company (EMC). On September 3, 1999, Scottsbluff experienced a large amount of rainfall. On that day, several homeowners sustained water and sewage accumulation in their basements and consequently sued the city for damages. Responding to a request from the city, EMC refused to cover these damages and refused to supply the city a defense, alleging that the damages fell within an exclusion of the insurance contract. The city and some of the homeowners settled the claims between themselves, and the city now seeks to have EMC reimburse it for these settlement payments. The district court granted EMC's motion for summary judgment and denied the city's motion for summary judgment. In its order, the district court found that the damage to the homes was not covered by the insurance policy. The city appeals.

## FACTUAL BACKGROUND

The facts are largely undisputed. On or about September 3, 1999, the city experienced a heavy rainfall. This same day, several homeowners in the Westmoor area of the city suffered damage to their homes by water and sewage entering and accumulating in their basements. Many of these homeowners filed claims against the city for these damages. The city notified its insurer, EMC, of these claims and requested that EMC acknowledge coverage and provide a defense. EMC responded on November 19 by denying both the coverage and the defense, indicating that the

damage to the homes fell within an exclusion found in section VI, paragraph 5, of an endorsement to the insurance policy. That exclusion reads:

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any hazard listed below, unless that hazard is specifically declared in the policy schedule and the applicable premium is shown.

. . . .

5. The overflow of rivers or streams, or the flooding of basements, or damage to property caused by the backing up of sanitary sewers or the backing up of water in storm sewers, drains or other facilities due to the runoff of precipitation, surface waters or flood.

At least 11 of the homeowners' claims against the city were settled between September 25 and November 9, 2000. The city filed a petition with the district court for Scotts Bluff County on October 11, 2000, seeking reimbursement from EMC under the insurance policy for the obligations flowing from the settlement agreements it had made and would make with the aggrieved homeowners.

The city filed a motion for summary judgment on October 9, 2001, and EMC filed its motion for summary judgment on November 8. After a December 11 hearing, the court entered an order, granting EMC's motion for summary judgment and denying the city's motion for summary judgment. The court considered that the damage to the homes may have been caused by either ground water seepage or sanitary sewer backup, or by a combination of the two. According to the court, the insurance policy terms excluded coverage for damage caused by sanitary sewer backup. Therefore, the court determined that to the extent the damage was caused by the backing up of the sanitary sewers, EMC was not liable because the policy excludes it.

The court further found that the city would not be liable to the homeowners for damage caused by ground water seepage and that as a result, the insurance policy did not cover such damage. Therefore, the court determined that to the extent the damage was caused by ground water seepage, EMC was not liable because the city was not liable. Since ground water seepage and

sanitary sewer backup were alleged to be the only causes of the damage, EMC was not liable. Accordingly, the district court granted EMC's motion for summary judgment and denied the city's motion for summary judgment. The city timely appeals.

## ASSIGNMENTS OF ERROR

The city assigns, restated, that the district court erred by (1) finding that the policy excluded from coverage damage caused by the backup of the sanitary sewer system, (2) finding that the city had no legal liability to the affected homeowners for damage caused by ground water seepage, (3) finding that the insurance policy did not cover damage caused by ground water seepage, and (4) sustaining EMC's motion for summary judgment and overruling the city's motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Continental Cas. Co. v. Calinger, ante* p. 557, 657 N.W.2d 925 (2003).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Finch v. Farmers Ins. Exch., ante* p. 277, 656 N.W.2d 262 (2003).

■ Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy that is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Id.*

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Id.*

## ANALYSIS

In its consideration of the motions for summary judgment, the district court made no findings regarding the cause of the damage. Neither party alleged that the cause was other than some combination of sanitary sewer backup and ground water seepage, although EMC denied any of it was caused by ground water seepage. The court then considered each cause separately to determine whether this factual dispute might be material, precluding summary judgment.

### SANITARY SEWER BACKUP

The court found that the portion of damage caused by the sanitary sewer backup fell under an exclusion in the insurance contract. The city assigns this finding as error. Familiar general principles guide our determination whether, as a matter of law, the claimed coverage exclusion applies to the undisputed facts of this case. An insurance policy is a contract. *Neff Towing Serv. v. United States Fire Ins. Co.*, 264 Neb. 846, 652 N.W.2d 604 (2002). An insurance contract is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *Finch, supra.* Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute. *Neff Towing Serv., supra.* While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Finch, supra.*

The insurance contract excludes damages caused by "[t]he overflow of rivers or streams, or the flooding of basements, or damage to property caused by the backing up of sanitary sewers or the backing up of water in storm sewers, drains or other facilities due to the runoff of precipitation, surface waters or flood." The city reads the phrase "due to the runoff of precipitation, surface waters or flood" to modify the damage caused by the backing up of sanitary sewers as well as of the storm sewers. The city then contends that the sanitary sewer backup was not due to the runoff of precipitation, surface waters, or flood, thus falling

outside this exclusion. However, a plain reading of the contract does not support the city's position.

We determine that the phrase "due to the runoff of precipitation, surface waters or flood" modifies "the backing up of water in storm sewers, drains or other facilities" and does not modify "the backing up of sanitary sewers." This conclusion is drawn from both the context and the contractual scheme. As the district court noted, the runoff of precipitation, surface waters, and floods directly affects only an open sewer system like the storm sewer system. A closed sewer system, such as a sanitary sewer system, is not directly affected by such water. The modifying phrase, in its plain and ordinary meaning, limits only the storm sewer damage. The storm sewer system fails and causes damage to the public when water backs up due to the runoff of precipitation, surface waters, or flood. The sanitary sewer system, on the other hand, fails and causes damage to the public by simply backing up.

It is clear that the limitation to damages caused only by runoff of precipitation, surface water, and flood does not apply to the sanitary sewer system exclusion. We determine that the ordinary meaning of the plain language of this paragraph excludes from coverage: (1) the overflow of rivers or streams, or (2) the flooding of basements, or (3) damage to property caused by (a) the backing up of sanitary sewers, or (b) the backing up of water in storm sewers, drains, or other facilities due to the runoff of precipitation, surface waters, or flood.

The district court concluded that the portion of the damage not attributable to ground water seepage was "damage to property caused by the backing up of sanitary sewers." This damage, falling as it does under this exclusion, is not covered by EMC. The city's first assignment of error is without merit.

### GROUNDWATER SEEPAGE

Considering the damages caused by the ground water seepage, the court found that this damage is also not covered by the insurance contract. The city claims the court erred. Since the insurance contract by its own language covers only the sums the insured is "legally obligated to pay" to the injured, see section I, coverage A, paragraph 1a, the dispositive question is whether

the city was legally obligated to the Westmoor area homeowners for the damage to their homes.

The court found that the city was not legally liable to the Westmoor area homeowners for that portion of the damage caused by ground water seepage. The court based this conclusion on the absence of any causally related act or omission attributable to the city—essentially the lack of any breach of duty. The city posits two grounds for reversing the court's finding that the city did not have any legal liability to the homeowners for damage caused by ground water seepage: (1) even if the city is not legally liable in tort, the city is legally liable in contract by operation of the settlement agreements, and (2) the contractual exclusion of the settlement agreements should not have been considered by the court, and even if it were, it is ambiguous and should have been construed to favor the insured to afford coverage.

■ Generally, where the event for which an insured seeks coverage is plainly outside the scope of the coverage encompassed in the policy according to a plain reading of its terms, an insurer may not be obligated to provide coverage to the insured. *Neff Towing Serv. v. United States Fire Ins. Co.*, 264 Neb. 846, 652 N.W.2d 604 (2002). An insurance contract is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *Finch v. Farmers Ins. Exch., ante* p. 277, 656 N.W.2d 262 (2003).

The contract in the instant case states that EMC

> will pay those sums that the insured becomes legally obligated to pay as damages because of [damage] to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for [damage] to which this insurance does not apply.

Section I, coverage A, paragraph 1a. We determine that the plain meaning of the phrase "becomes legally obligated to pay" is limited to those obligations which flow as a direct consequence of an "'occurrence,'" defined within the contract. The city was not legally liable to pay the homeowners for those damages caused by ground water seepage. The eventual obligation in contract came as a result of the city's voluntary agreement with certain

individuals, which does not in this instance legally bind the third-party insurance carrier. The parties to the insurance contract at the time the contract was made could not have reasonably intended it to cover the voluntary agreements of the insured to pay for damage it was not otherwise legally obligated to pay.

The city also alleges that EMC was obligated to defend them against the homeowner suits. Although a liability insurer is legally obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy. *Neff Towing Serv., supra.* Similarly, the contractual duty to defend covers suits seeking damages only "to which this insurance applies." The district court was correct in its conclusion that the city was in fact under no legal obligation regarding damages caused by ground water seepage. Because the city was not legally liable, EMC was under no duty to defend or indemnify the city.

Next, the city claims that the provision which excludes from coverage any contractual assumption of liability by the city is an affirmative defense. The city further alleges both that EMC's failure to raise this defense amounts to waiver or estoppel and that the exclusion is ambiguous and should be read to afford coverage. However, neither EMC in its answer nor the district court in its decision relied upon this exclusion. The ground water seepage damage simply falls outside the scope of the insurance contract. The fact that the damages here also fall under a contract exclusion does not change the soundness of the court's actual basis for its decision.

Lastly, the city argues that the only issue actually before the court was whether the damages caused by sanitary sewage are covered by the policy, since this was the only source of damages conceded by EMC and the only contingency for which EMC prepared a defense. As a result, the city contends, the court erred in considering either the city's liability toward the Westmoor area homeowners or the insurance policy's coverage of damages caused by ground water seepage. However, in its pleadings, the city alleged that the damage resulted from either the sanitary sewage backup or the ground water seepage. Since EMC alleged that the damage was caused completely by the sanitary sewage backup, this was an issue of fact. Before the court could rule on

either motion for summary judgment, it had to determine whether these disputed facts were material. Summary judgment would have been inappropriate had the facts in dispute been material. See *Continental Cas. Co. v. Calinger, ante* p. 557, 657 N.W.2d 925 (2003).

The court analyzed the case, as was proper on a motion for summary judgment, assuming without deciding that the damage might have been caused in either or both ways, as suggested by the city. Having considered that some of the damage may have been caused by ground water seepage, the court was dutybound to determine the ultimate inferences that may be drawn from those facts, see *id.*, in particular, whether the insurance contract covered damages so caused. As we have determined above, the answer to that question flows in part from whether the city had become legally liable to the homeowners for that damage. The court appropriately considered both the insurance policy's coverage of damages caused by ground water seepage and the city's liability toward the Westmoor area homeowners. We conclude that the district court did not err in denying the city's motion for summary judgment or in granting EMC's motion for summary judgment, finding EMC not liable to indemnify or defend the city for any damages set forth in the operative petition.

## CONCLUSION

The district court correctly determined both that damages caused by sanitary sewer backup fell into an exclusion to the insurance contract and that damages caused by ground water seepage fell outside the scope of the insurance contract. Without any issues of material fact and without any duty of EMC to defend or indemnify the city flowing from the ultimate inferences that may be drawn from the settled facts, summary judgment was proper. The judgment of the district court is affirmed.

AFFIRMED.