THOMAS POULTON AND KAREN POULTON, APPELLANTS, V.
STATE FARM FIRE AND CASUALTY COMPANIES, APPELLEE.

675 N.W.2d 665

Filed March 12, 2004.   No. S-02-1418.

David A. Hecker, Angela D. Melton, and Richard P. Jeffries, of Kutak Rock, L.L.P., for appellants.

Joseph E. Jones and Andrea F. Scioli, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## NATURE OF CASE

Due to mold and fungi in their home, Thomas Poulton and Karen Poulton suffered a significant loss of personal property. Seeking compensation for their loss, the Poultons filed a claim with their insurer, State Farm Fire and Casualty Companies (State Farm). State Farm denied the claim, and the Poultons sued State Farm for coverage. The trial court determined the Poultons' insurance policy did not provide coverage and dismissed their petition. The issue on appeal is whether the Poultons' personal property is covered under the "resulting loss" provision of their policy.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2000, the Poultons purchased real estate in Omaha, Nebraska. Shortly thereafter, they noticed a mold and fungi infestation problem in their home. This problem, the Poultons claim, caused them to suffer the loss of all of the personal property that

they had placed inside of the home. Seeking compensation for the damage, the Poultons turned to their insurer.

The Poultons had insured their property under a homeowner's policy of insurance (the Policy) issued by State Farm. On September 25, 2000, the Poultons made a claim to State Farm for loss of their personal property caused by a mold and fungal infestation of their home. Upon receiving notice of the claim, State Farm sent an adjuster to investigate the Poultons' loss. After the investigation, State Farm sent a letter to the Poultons, dated October 6, 2000, denying coverage. The letter stated that State Farm was denying coverage because the Poultons' loss was not caused by 1 of the 16 named perils in the section of the Policy dealing with insured losses to personal property.

On November 29, 2000, the Poultons, via letter, sought reconsideration of State Farm's determination. The Poultons argued that coverage for their personal property existed under the plain language of the policy. In addition, the Poultons argued that their loss was the direct result of a mold and fungal infestation of their home and, therefore, was covered as a resulting loss under the Policy.

On December 19, 2000, State Farm denied coverage for a second time. State Farm repeated its position that the Poultons' loss was not caused by 1 of the Policy's 16 named perils and that therefore, the Policy did not cover their loss. In addition, State Farm argued that the resulting loss provision, properly interpreted, did not provide coverage for the loss of personal property.

The Poultons then filed a petition for declaratory relief in district court. The petition requested a declaration that the Policy covered the Poultons' loss and an order requiring State Farm to pay the Poultons for the damage sustained to their personal property. After State Farm answered, a trial on stipulated facts was held; thereafter, the district court entered a judgment in favor of State Farm. The court determined that (1) the Policy was a "specific risk" policy that did not provide coverage for damage to personal property caused by mold or fungi, (2) the resulting loss provision applied only to structural damage to the dwelling and not to personal property damage, and (3) the Policy was not ambiguous. The Poultons' petition was dismissed with prejudice, and they subsequently filed a timely notice of appeal.

## ASSIGNMENTS OF ERROR

The Poultons assign three errors, more properly restated as two: the district court erred in determining that (1) the Policy's resulting loss provision did not cover damage to their personal property and (2) the Policy is not ambiguous.

## STANDARD OF REVIEW

■ The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *R.W. v. Schrein*, 264 Neb. 818, 652 N.W.2d 574 (2002).

## ANALYSIS

### RESULTING LOSS

Obviously, the focus of this appeal is the coverage provided under the Policy. Before examining the relevant provisions, however, a brief overview of the Policy will provide context for our subsequent analysis. The Policy's table of contents shows that the Policy is divided into five parts and a number of sub-parts. Here, the disputed provisions are found in Section I, which is entitled "**SECTION I - YOUR PROPERTY.**" The table of contents, with respect to Section I, is as follows:

**SECTION I - YOUR PROPERTY**
COVERAGES . . . . . . . . . . . . . . . . . . . 3
Coverage A - Dwelling . . . . . . . . . . . 3
Coverage B - Personal Property . . . . 3
Coverage C - Loss of Use . . . . . . . . 4
Additional Coverages . . . . . . . . . . . . . 5
Inflation Coverage . . . . . . . . . . . . 7
LOSSES INSURED . . . . . . . . . . . . . . . 7
LOSSES NOT INSURED . . . . . . . . . . . . 9
LOSS SETTLEMENT . . . . . . . . . . . . 11
CONDITIONS . . . . . . . . . . . . . . . 13

In the body of the Policy, under the provision entitled "COVERAGES," the Policy states that under "Coverage A," State Farm covers the "dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**." As to personal property, the Policy states that under "Coverage

B," State Farm covers "personal property owned or used by an **insured** while it is anywhere in the world."

Under the provision entitled **"LOSSES INSURED,"** the Policy divides itself into two categories of covered losses: (1) **"COVERAGE A - DWELLING"** and (2) **"COVERAGE B - PERSONAL PROPERTY."** They state:

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**
2. **Windstorm or hail.** . . .
. . . .
3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft** . . . .
6. **Vehicles** . . . .
7. **Smoke** . . . .
8. **Vandalism or malicious mischief** . . . .
9. **Theft** . . . .
10. **Falling objects.** . . . .
11. **Weight of ice, snow or sleet** . . . .
12. **Sudden and accidental discharge or overflow** of water or steam . . . .
13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system . . . .
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system . . . .
15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring . . . .
16. **Breakage of glass** . . . .

This action arises out of a claim for damage done to personal property; therefore, we turn to Coverage B - Personal Property.

As listed above, Coverage B sets forth 16 specific perils for which personal property damages are covered. Because the provision is clear that an insured's personal property is only covered for damages caused by the 16 listed perils, this provision of the Policy can be described as providing "specific perils" or "named perils" coverage. See 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 101:7 at 101-17 (1997).

A specific perils policy "exclude[s] all risks not specifically included in the contract." *Id.* In other words, a specific perils policy provides coverage in accordance with the legal maxim "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of the others), and is the converse of an all-risks or open perils policy, which provides coverage for all direct losses not otherwise excluded. See, 7 Russ & Segalla, *supra* at 101-17 to 101-18 (under all-risks policies "all risks are included in the coverage unless specifically excluded in the terms of the contract"); Annot., 30 A.L.R.5th 170 (1995) ("[a]ll-risks insurance is a special type of insurance extending to risks not usually contemplated, and generally allows recovery for all fortuitous losses, unless the policy contains a specific exclusion expressly excluding the loss from coverage"). Consequently, in order for there to be coverage for damage to personal property under the Policy, the damage to the personal property must arise out of one of the 16 listed perils. See, *Curtis O. Griess & Sons v. Farm Bureau Ins. Co.*, 247 Neb. 526, 530, 528 N.W.2d 329, 332 (1995) ("[i]n order to recover under an insurance policy of limited liability, the insured must bring himself or herself within its express provisions"); *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992); *Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co.*, 134 Neb. 188, 278 N.W. 374 (1938). See, also, *Harrigan v. Liberty Mut. Fire Ins. Co.*, 170 A.D.2d 930, 566 N.Y.S.2d 755 (1991) (property insurance only provides coverage for harm caused by named perils); 10 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 148:48 at 148-84 (1998) (specific perils policy covers "losses caused by specified perils; to the extent not specified, no coverage results").

Here, both parties agree that mold is not a listed peril. Therefore, the Policy would not appear to provide coverage for damage to the Poultons' personal property. The Poultons,

however, argue that coverage still exists via one of the Policy's resulting loss provisions.

The disputed resulting loss provision is found in "**SECTION I - LOSSES NOT INSURED**," and states, in relevant part:

> 1. We do not insure for any loss *to the property described in Coverage A* which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . .
>
> i. mold, fungus or wet or dry rot;
>
> . . . .
>
> However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

(Emphasis supplied.) The Poultons argue that although damage to the dwelling caused by mold is excluded under "i," coverage exists because (1) their loss of personal property was the result of the mold contamination of their insured dwelling and (2) the phrase "any resulting loss" suggests that all resulting losses, including losses to personal property, are covered. On the other hand, State Farm argues that under the Policy's plain language, the resulting loss provision provides coverage for loss to the dwelling (Coverage A) but does not provide coverage for loss to personal property (Coverage B).

The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *R.W. v. Schrein*, 264 Neb. 818, 652 N.W.2d 574 (2002). In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved. *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001). In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded

their plain and ordinary meaning. *Volquardson v. Hartford Ins. Co.*, 264 Neb. 337, 647 N.W.2d 599 (2002). Furthermore, the language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003).

Although the parties cite numerous cases from other jurisdictions to support their respective arguments, our independent review leads us to conclude that the meaning of the Policy can be determined from its clear and unambiguous language. After reviewing the Policy, we conclude that under its plain language, the disputed "resulting loss" provision does not provide coverage for loss to personal property.

As noted previously, under the provision entitled "**LOSSES INSURED**," the Policy provides coverage for two main, and distinct, categories of losses: (1) to the dwelling (Coverage A) and (2) to personal property (Coverage B). We have already concluded that Coverage B is appropriately characterized as providing specific perils coverage for the Poultons' personal property. Our review of Coverage A leads us to conclude that this section of the Policy provides all-risks coverage for the dwelling, subject to a limited number of exclusions. Stated otherwise, under Coverage A, the Poultons' dwelling was insured against all risks except those specifically excluded in Section I - Losses Not Insured, and under Coverage B, the Poultons' personal property was insured against loss caused by the listed perils except as provided in Section I - Losses Not Insured.

Thus, we must turn to Section I - Losses Not Insured. This section is divided into three numbered paragraphs, and for clarity, the disputed paragraph is restated below:

> 1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . .
>
> i. mold, fungus or wet or dry rot;

. . . .

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

We conclude that the plain language of paragraph 1 shows that the 14 listed exclusions ("a" through "n") apply only to the dwelling (Coverage A). In other words, the listed exclusions, including the exclusion for mold, were drafted to operate as exclusions to the all-risks coverage provided for the dwelling under Coverage A.

▮▮▮ Furthermore, we conclude that the plain language of the Policy shows that the resulting loss paragraph, which immediately follows the 14 exclusions, was intended to be limited to the dwelling (Coverage A). Obviously, the resulting loss provision should be read in the context of where it is located, i.e., as a subset of paragraph 1. See 2 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance § 5.1 (2d ed. 1996). Because the 14 exclusions referenced in, and immediately subsequent to, paragraph 1 are clearly limited to the dwelling (Coverage A), it would be illogical to conclude that the resulting loss provision, which follows and references the same exclusions, is not likewise limited. See 2 Holmes & Rhodes, *supra* at 20 ("[w]hatever the construction of a particular clause standing alone may be, it must be read in connection with other clauses . . ."). Simply put, the Poultons' interpretation must be rejected because they seek to expand the intended coverage of the Policy by plucking a provision out of the context in which it was meant to apply. See *Bedrosky v. Hiner*, 230 Neb. 200, 204, 430 N.W.2d 535, 539 (1988) ("party may not pick and choose among the clauses of the contract, accepting only those that advantage it").

Our reading of the Policy is further supported by the language used in the remaining two paragraphs of this section. As quoted above, paragraph 1 states that State Farm does "not insure for any loss to the property described in Coverage A." Paragraphs 2 and 3, however, are expressly not so limited: "2. We do not insure *under any coverage* for any loss which would not have occurred in the absence of one or more of the following . . . . 3. We do not insure *under any coverage* for any loss consisting of one or more of the items below." (Emphasis supplied.) Thus, while paragraph

1 is specifically limited to the dwelling (Coverage A), paragraphs 2 and 3 use the phrase "under any coverage" to refer to both, inter alia, the dwelling (Coverage A) and personal property (Coverage B). This distinction is important because it shows the resulting loss provisions which follow paragraphs 2 and 3 were intended to apply to both Coverages A and B, whereas paragraph 1 was intended to be expressly limited to Coverage A (the dwelling). In sum, we conclude that the Policy, under the resulting loss provision found in Section I - Losses Not Insured, paragraph 1, does not provide coverage for the Poultons' loss of personal property.

### AMBIGUITY

As an alternative argument, the Poultons contend that coverage exists under the resulting loss provision because the phrase "any resulting loss" is ambiguous. The Poultons suggest that a reasonable insured would read the phrase and conclude that all resulting losses, including losses to personal property, are covered under the resulting loss provision. Therefore, according to the Poultons, the policy is ambiguous as to what the resulting loss provision covers, and the ambiguity should be construed against State Farm. See *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003) (ambiguous insurance policy will be construed against drafter).

Whether the language in an insurance policy is ambiguous presents a question of law. *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001). A contract, such as an insurance policy, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Volquardson v. Hartford Ins. Co.*, 264 Neb. 337, 647 N.W.2d 599 (2002). Moreover, while an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Farm Bureau Ins. Co. v. Martinsen*, 265 Neb. 770, 659 N.W.2d 823 (2003).

Here, the policy is not ambiguous. We have already concluded that, properly read, the resulting loss provision applies only to the dwelling (Coverage A). Therefore, the phrase "any resulting loss" could not reasonably extend to the Poultons'

personal property, which is covered solely under Coverage B. See 2 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance § 5.1 at 21-22 (2d ed. 1996) ("[a] policy will not be considered ambiguous merely because a word or phrase, isolated from its context, is susceptible to more than one meaning").

In sum, the Policy provided limited coverage for the Poultons' personal property. While the hardship that the loss of personal property has imposed upon the Poultons is regrettable, "[p]arties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute." *City of Scottsbluff v. Employers Mut. Ins. Co.*, 265 Neb. 707, 711, 658 N.W.2d 704, 708 (2003). Here, we are bound to enforce the contract in accordance with the plain meaning of the words of the contract, see *Trimble v. Wescom, ante* p. 224, 673 N.W.2d 864 (2004), and under the plain meaning of the words in the Policy, the Poultons' personal property was not insured against this type of loss.

## CONCLUSION

For the foregoing reasons, we conclude that the Policy does not cover the Poultons' loss of personal property. The judgment of the district court is affirmed.

AFFIRMED.

MILLER-LERMAN, J., not participating.