Village of Memphis, Nebraska, a political subdivision,
appellee, v. Roger Frahm and Marcia Frahm,
husband and wife, appellants.

___ N.W.2d ___

Filed February 14, 2014.    No. S-13-273.

1. **Contracts.** The construction of a contract is a question of law.
2. **Statutes.** Statutory interpretation presents a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
4. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.
5. **Contracts.** A settlement agreement is subject to the general principles of contract law.
6. **Contracts: Statutes: Attorney Fees.** In accordance with the legal maxim "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of the others), an express reservation in a settlement agreement of a claim for attorney fees under one specific statute excludes a claim for attorney fees under any other statute.
7. **Courts: Eminent Domain.** The powers conferred upon a county court judge by the condemnation statutes are not judicial powers or duties, but are instead purely ministerial in character.
8. **Eminent Domain: Damages: Proof.** In a condemnation action, the public entity has the burden to allege and prove that before commencing condemnation proceedings, a good faith attempt was made to agree with the owner of the land as to the damages the owner was entitled to receive.
9. **Eminent Domain.** The requirement of good faith negotiations is in the nature of a condition precedent to the right to condemn.
10. **Constitutional Law: Eminent Domain: Words and Phrases.** Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.
11. **Eminent Domain: Property: Intent.** Inverse condemnation has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the public entity, and has been deemed to be available where private property has actually been taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.
12. **Eminent Domain: Attorney Fees: Appeal and Error.** Neb. Rev. Stat. § 76-720 (Reissue 2009) does not permit an award of attorney fees for services rendered prior to the initiation of an appeal in district court.
13. **Courts: Eminent Domain: Time: Appeal and Error.** Because a public entity does not have the right to condemn without a good faith attempt to negotiate, it follows that if an appeal is taken to the district court in a condemnation action,

for purposes of Neb. Rev. Stat. § 76-720 (Reissue 2009), the critical time period for good faith negotiations with the landowner is before the public entity initiated condemnation proceedings.

14. **Eminent Domain.** There is no requirement of good faith negotiations before a landowner commences an inverse condemnation action.

15. **Eminent Domain: Time: Appeal and Error.** If an appeal is taken to the district court in an inverse condemnation action, the relevant time period for any good faith negotiations for purposes of Neb. Rev. Stat. § 76-720 (Reissue 2009) is after the filing of the appeal.

16. **Eminent Domain: Statutes: Intent: Appeal and Error.** The purpose of Neb. Rev. Stat. § 76-720 (Reissue 2009) is to protect property owners against harassment by the institution of groundless appeals on the part of public entities, and its use should be limited to the purposes for which it was intended.

17. **Eminent Domain: Attorney Fees.** Under Neb. Rev. Stat. § 76-720 (Reissue 2009), the district court shall award the property owner attorney fees if the court finds that the public entity did not negotiate in good faith with the property owner.

Appeal from the District Court for Saunders County: Mary C. Gilbride, Judge. Affirmed.

Robert M. Sullivan, of Sullivan Shoemaker, P.C., L.L.O., for appellants.

Damien J. Wright, of Welch Law Firm, P.C., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

If a public entity initiates condemnation proceedings without negotiating in good faith with the property owner, a statute mandates that the owner be allowed attorney fees upon an appeal to the district court.[1] In this appeal, we must determine how this statute applies where the property owner initiates an inverse condemnation proceeding with a county judge and the public entity appeals to the district court. We conclude that in such a situation, good faith negotiations after the taking of the appeal satisfy the statutory requirement. And because the record demonstrates that the public entity did so, we conclude

---

[1] See Neb. Rev. Stat. § 76-720 (Reissue 2009).

that the district court did not abuse its discretion in declining to award attorney fees.

## BACKGROUND

In 1974, a church executed an "Easement for Right of Way" that granted to the Village of Memphis, Nebraska (Village), the right to construct and operate a water distribution line and wellhouse on a strip of land owned by the church. At some point, the Village had underground electrical wires installed on the real property in order to connect the equipment to a power supply. However, the electrical wires were partly situated under a portion of the real property that was outside of the easement area.

In 2008, Roger Frahm and Marcia Frahm purchased the church's property. The Frahms observed the wellhouse, but their efforts to obtain a copy of the easement for it were unsuccessful. The easement was not recorded in the records of the register of deeds for Saunders County, Nebraska, until April 3, 2009. Sometime after the Frahms purchased the property, they discovered that one of the Village's underground utility lines associated with the operation of the wellhouse had been placed outside of the easement area.

In October 2009, the Frahms filed with the county judge an inverse condemnation petition against the Village and sought compensation for an alleged unlawful taking. They claimed that the Village deprived them of their property in violation of the state and federal Constitutions by (1) maintaining a well, wellhouse, and related improvements upon the Frahms' property without an easement and (2) maintaining a buried powerline and water pipes without an easement. The appraisers appointed by the county judge found that the Frahms suffered damages by the Village's burying electric cable and a water line outside of the easement area and by the Village's failure to record an easement in the office of the Saunders County register of deeds. The appraisers assessed the damages to be awarded to the Frahms at $15,000. The Frahms subsequently moved for attorney fees and expenses under Neb. Rev. Stat. § 76-726(2) (Reissue 2009), and the county judge ordered the Village to pay $5,322 to the Frahms.

The Village appealed to the district court from the return of the appraisers and requested that the court determine the Village had a valid and existing easement. The Village subsequently moved for summary judgment, alleging that there was no genuine issue of material fact with regard to the validity of its easement rights upon the Frahms' property. Following a hearing, the district court entered partial summary judgment. The court stated that there was no issue of fact that the presence of the wellhouse was apparent, that the Frahms conducted an inquiry into the facts and learned of the easement prior to the purchase, and that they purchased the land subject to the easement for the wellhouse and the underground lines which serve the wellhouse. The court determined that the Frahms were not entitled to compensation as the result of inverse condemnation with respect to the easement, but that there was an issue as to whether they were entitled to compensation for the portion of the lines which was outside of the easement area.

After the Village filed its appeal to the district court, there were numerous communications between the parties in an attempt to negotiate a settlement. The parties ultimately signed a settlement agreement and release. According to a recital in the agreement, the parties intended to "fully and forever settl[e] the issue of compensation to be paid to the Frahms for the alleged taking on the terms set forth in this Settlement Agreement, and to submit the issue of the Frahms' claim for attorney's fees to the Court for determination." Under the agreement, the Village would pay the Frahms $250 and upon receipt of that payment, the Frahms would execute a utility license to grant the Village a license for the operation, use, and maintenance of the Village's utility line. The Village agreed to abandon the powerline that was outside of the easement area and to install a new line within the easement area. The agreement contained the following release:

> 4. **Release.** Upon receipt of the Settlement Payment in full, the Frahms irrevocably and unconditionally waive, release, acquit and forever discharge the Village . . . from any and all claims, demands, obligations, losses, causes of action, costs, expenses, and liabilities that in any way

arise from or relate to the taking alleged in their inverse condemnation suit, whether such claims are based on contract, tort, statutory or other legal or equitable theory of recovery, whether known or unknown, that the Frahms may have against the Village for acts occurring prior to the execution of this Settlement Agreement; **Except** that the Frahms reserve a claim for attorney's fees as allowed by . . . § 76-720.

The parties subsequently filed a stipulation with the district court which stated that the parties had entered into a settlement agreement as to compensation to be paid to the Frahms for the taking alleged in their inverse condemnation action and that the Frahms "preserved a claim for attorney's fees pursuant to . . . § 76-720."

The Frahms subsequently moved for fees and costs, seeking a total of $25,362.15 in attorney fees. During a hearing on the motion, the district court received evidence of the parties' numerous attempts to reach a settlement. The court denied the motion, stating: "The record reflects that the Village negotiated an easement with the prior owners of the property. . . . The record does not demonstrate that the Village failed to engage in good faith negotiations with respect to that small portion of the utility line placed outside the easement." The court concluded that under the terms of the settlement agreement, the Frahms waived their right to attorney fees under § 76-726 and that attorney fees were not available on the facts of this case under § 76-720.

The Frahms timely appealed, and we moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[2]

## ASSIGNMENTS OF ERROR

The Frahms allege that the district court erred in (1) failing to find that the Village abandoned the easement by failing to timely file it and by failing to timely produce a copy of it upon the Frahms' request, (2) finding that the Frahms were not bona fide purchasers without notice of the easement on

---

[2] See Neb. Rev. Stat. § 24-1106 (Reissue 2008).

the property, (3) finding that the Frahms learned of the easement prior to their purchase of the property, (4) finding that the Frahms purchased the property subject to the easement, (5) finding that the property was servient to the easement when it was purchased by the Frahms, (6) finding that the Frahms were not entitled to compensation for the easement, (7) denying the Frahms' motion for attorney fees and costs, and (8) finding that the Frahms waived recovery of attorney fees under § 76-726(2).

## STANDARD OF REVIEW

[1-3] The construction of a contract is a question of law.[3] Statutory interpretation presents a question of law.[4] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[5]

[4] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[6]

## ANALYSIS

### Waiver of Claims

The Frahms' first six assignments of error relate to the district court's order granting the Village partial summary judgment. Generally, the Frahms attack the court's rulings related to their knowledge of the easement at the time of purchase, the easement's continued validity, and whether the Frahms were entitled to monetary damages due to the easement. They contend that the court should not have entered partial summary judgment because genuine issues of material fact existed.

[5] The Frahms' arguments ignore the terms of the settlement agreement. A settlement agreement is subject to the general principles of contract law.[7] In the settlement agreement,

---

[3] *Thrower v. Anson*, 276 Neb. 102, 752 N.W.2d 555 (2008).

[4] *Id.*

[5] *Id.*

[6] *Armstrong v. County of Dixon*, 282 Neb. 623, 808 N.W.2d 37 (2011).

[7] *Id.*

the Frahms "acknowledge[d]" that the easement was "binding upon them" and they specifically waived and released all claims that "in any way arise from or relate to the taking alleged in their inverse condemnation suit." Their inverse condemnation petition alleged two unlawful takings: (1) the maintenance of the well, wellhouse, and related improvements without an easement and (2) the maintenance of the buried powerline and water pipes without an easement. Under the clear and unambiguous language of the release, the Frahms have waived any claims concerning the easement and the court's entry of partial summary judgment.

[6] The Frahms also assign that the district court erred in finding that they waived recovery of attorney fees under § 76-726(2). Their argument acknowledges the release contained in the settlement agreement but claims that the release did not waive recovery of fees under § 76-726 because the general language of the release did not mention attorney fees. We disagree. The release explicitly waived "all claims . . . that in any way arise from or relate to the taking alleged in their inverse condemnation suit . . . **Except** that the Frahms reserve a claim for attorney's fees as allowed by . . . § 76-720." In accordance with the legal maxim "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of the others),[8] the express reservation in the settlement agreement of a claim for attorney fees under one specific statute excludes a claim for attorney fees under any other statute. Because the release specifically reserved a claim for attorney fees under § 76-720 but did not reserve a claim for attorney fees under § 76-726, we conclude such a claim is waived under the plain language of the settlement agreement.

## Attorney Fees Under § 76-720

Because of the waiver of all other claims, the only assignment of error properly before us is the Frahms' contention that the district court erred in finding attorney fees were not available to them under § 76-720. Section 76-720 provides in part:

[8] *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004).

If an appeal is taken from the award of the apprais-
ers by the [property owner] and the amount of the final
judgment is greater by fifteen percent than the amount of
the award, or if appeal is taken by the [public entity] and
the amount of the final judgment is not less than eighty-
five percent of the award, or if appeal is taken by both
parties and the final judgment is greater in any amount
than the award, the court may in its discretion award
to the [property owner] a reasonable sum for the fees
of his or her attorney and for fees necessarily incurred
for not more than two expert witnesses. On any appeal
by the [public entity], the [public entity] shall pay all
court costs on appeal. If appeal is taken by the [property
owner] only and the final judgment is not equal to or
greater than the award of the appraisers, the court may in
its discretion award to the [public entity] the court costs
incurred by the [public entity], but not attorney or expert
witness fees.

If an appeal is taken to the district court and the district
court finds that the [public entity] did not negotiate in
good faith with the property owner or there was no public
purpose for taking the property involved, the court shall
award to the [property owner] a reasonable sum for the
fees of his or her attorney and the [public entity] shall pay
all court costs on appeal.

The parties focus on the second paragraph of the statute,
as did the district court. There does not appear to be any
dispute that the taking was for a public purpose; rather, the
dispute centers on whether the Village engaged in good faith
negotiations.

The parties disagree on when the good faith negotiations
need to have occurred in the context of § 76-720 as applied in
an inverse condemnation proceeding initiated by the Frahms
before a county judge and appealed by the Village to the dis-
trict court. The Frahms assert that the lack of good faith nego-
tiations is inherent in inverse condemnation cases and that the
Village needed to initiate good faith negotiations prior to the
filing of the petition in inverse condemnation. The Village, on

the other hand, points out that § 76-720 relates only to appeals and asserts that the Frahms' interpretation is inconsistent with the language of the statute. Before deciding this question, we must briefly summarize the nature of condemnation proceedings at the county court level and the distinctions between condemnation and inverse condemnation actions.

[7] The powers conferred upon a county court judge by the condemnation statutes are not judicial powers or duties, but are instead purely ministerial in character.[9] Instead of conducting a trial and receiving evidence, the county judge appoints the appraisers.[10] The hearing is before the appraisers rather than the court, and the issues in county court are limited to the amount of damages.[11] Thus, we have determined that whether a public entity had attempted to negotiate a sale prior to commencing condemnation proceedings was a judicial question which the county court lacked power to decide.[12] The appeal to the district court taken under Neb. Rev. Stat. § 76-715 (Reissue 2009) is part of the proceedings which are initiated by the property owner in county court by filing under Neb. Rev. Stat. § 76-705 (Reissue 2009).[13] The appeal authorized by § 76-715 is not a conventional civil appeal from county court to district court.[14] Under § 76-715, the property owner or public entity appeals from the assessment of damages by the appraisers rather than from an order or ruling of the county court.[15] And unlike a conventional appeal, the appeal is tried de novo in the district court.[16]

[8-11] A condemnation action is distinct from an inverse condemnation action. "A condemnation proceeding is 'the

---

[9] *City of Waverly v. Hedrick*, 283 Neb. 464, 810 N.W.2d 706 (2012).

[10] See *id*.

[11] See *id*.

[12] See *Higgins v. Loup River Public Power Dist.*, 157 Neb. 652, 61 N.W.2d 213 (1953).

[13] *Armstrong v. County of Dixon, supra* note 6.

[14] *Id*.

[15] See *id*.

[16] See *id*.

exercise of eminent domain by a governmental entity.'"[17] In a condemnation action, the public entity has the burden to allege and prove that before commencing condemnation proceedings, a good faith attempt was made to agree with the owner of the land as to the damages the owner was entitled to receive.[18] The requirement of good faith negotiations is in the nature of a condition precedent to the right to condemn.[19] There is no similar requirement of good faith negotiations in an inverse condemnation action. Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.[20] Inverse condemnation has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the public entity, and has been deemed to be available where private property has actually been taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.[21]

[12] Other statutes make it clear that attorney fees in inverse condemnation proceedings initiated by the owner at the county court level are not included in § 76-720. A statute specifically allows the owner of property taken or damaged for public use without condemnation proceedings to file a petition with the county judge to have the damages ascertained and determined.[22] Another statute expressly requires that the property owner be awarded costs, including reasonable attorney fees, where the owner receives an award of damages or a settlement is effected at the county court level.[23] And under this statute,

---

[17] *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 332-33, 836 N.W.2d 588, 596 (2013).

[18] See *Moody's Inc. v. State*, 201 Neb. 271, 267 N.W.2d 192 (1978).

[19] *Id*.

[20] *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013).

[21] *Id*.

[22] See § 76-705.

[23] See § 76-726(2).

the owner is entitled to the award of attorney fees regardless of whether there have been good faith negotiations. Thus, the attorney fees attributable to a proceeding commenced by the owner with the county judge are not included under § 76-720 but are governed by another statute. It necessarily follows that attorney fees in such a proceeding authorized by § 76-720 apply only at the district court level. Indeed, we have held that § 76-720 does not permit an award of attorney fees for services rendered prior to the initiation of an appeal in district court.[24]

[13-15] Nothing in the language of § 76-720 indicates that it does not apply to inverse condemnation actions. Thus, we must interpret § 76-720 in such a manner that it applies to both condemnation and inverse condemnation actions. Because a public entity does not have the right to condemn without a good faith attempt to negotiate,[25] it follows that if an appeal is taken to the district court in a condemnation action, for purposes of § 76-720, the critical time period for good faith negotiations with the landowner is before the public entity initiated condemnation proceedings. On the other hand, there is no requirement of good faith negotiations before a landowner commences an inverse condemnation action. And, as we have already noted, another statute mandates an award of attorney fees for the proceedings at the county court level. Thus, we conclude that if an appeal is taken to the district court in an inverse condemnation action, the relevant time period for any good faith negotiations for purposes of § 76-720 is after the filing of the appeal. We reject the Frahms' argument that the good faith negotiations must occur before the filing of an inverse condemnation action.

[16] As the Village points out,

> [o]nce the appraisers return their award, the parties must consider whether to appeal to the District Court for a de novo proceeding. In this context, § 76-720 is intended to promote the efficient resolution of disputes by providing

---

[24] *Johnson v. Nebraska Public Power Dist.*, 187 Neb. 421, 191 N.W.2d 594 (1971).

[25] See *Moody's Inc. v. State, supra* note 18.

for attorney's fees through two mechanisms: the 85/15 percent threshold, and the "good faith" requirement. These mechanisms provide an incentive for the parties to either accept the appraisers return if they do not believe that it will be substantially altered by trial on the merits, or to negotiate a settlement to the matter. Thus, the statute contemplates that "good faith" negotiations will occur as part of the appeal process.[26]

The purpose of § 76-720 is to protect property owners against harassment by the institution of groundless appeals on the part of public entities, and its use should be limited to the purposes for which it was intended.[27]

[17] Under § 76-720, the district court shall award the property owner attorney fees if the court finds that the public entity did not negotiate in good faith with the property owner. Here, the district court declined to award fees, stating that the record did not demonstrate that the Village failed to engage in good faith negotiations. Based on the evidence contained in the record—which was just a sampling of the numerous communications between the parties aimed at settling this case after the appeal to the district court was filed—we conclude that the district court did not abuse its discretion in declining to award attorney fees.

## CONCLUSION

We conclude that under the clear and unambiguous language of the release contained in the parties' settlement agreement, the Frahms waived all claims concerning the easement, the court's entry of partial summary judgment, and attorney fees under § 76-726. We further conclude that the district court did not abuse its discretion in declining to award attorney fees under § 76-720, because the record demonstrated that the Village engaged in good faith negotiations to settle with the Frahms after the Village appealed to the district court.

AFFIRMED.

---

[26] Brief for appellee at 22-23.

[27] *Anderson v. State*, 184 Neb. 467, 168 N.W.2d 522 (1969).